699 So.2d 252 (1997)
CJ RESTAURANT ENTERPRISES, INC., Appellant,
v.
FMS MANAGEMENT SYSTEMS, INC., Appellee.
No. 96-2809.
District Court of Appeal of Florida, Third District.
July 30, 1997.
Rehearing Denied October 8, 1997.
*253 Rubin, Baum, Levin, Constant, Friedman & Bilzin, and Alvin D. Lodish, and Sherril M. Colombo, Miami; Christopher B. Waldera, Ft. Lauderdale, for appellant.
Atlas, Pearlman, Trop & Borkson, P.A., and Jan Douglas Atlas, and Wayne H. Schwartz, Ft.Lauderdale, for appellee.
Before COPE, GREEN, and SORONDO, JJ.
GREEN, Judge.
This is an appeal from the entry of an ex parte final judgment of possession and permanent injunction pursuant to a stipulation and agreed order between the parties to this appeal. For the reasons which follow, we reverse.
Appellant C.J. Restaurant Enterprises, Inc. ("CJ"), was licensed by appellee FMS Management ("FMS"), to operate eight International House of Pancakes (IHOP) restaurants. Pursuant to the terms of the license agreements, CJ was required to make weekly sales and remittance payments to FMS based upon the gross sales of each restaurant. CJ, however, routinely made and FMS accepted such payments 2 to 3 weeks after their due date. The terms of the license agreements further provided that upon CJ's default of any payment due, FMS was to provide written notice thereof to CJ and allow CJ to cure the default within five business days after CJ's receipt of the notice or within five days of CJ's first refusal to accept the written notice. CJ's failure to cure the default could result in the termination of the license agreements and FMS' repossession of the same.
CJ subsequently fell into arrears in its payments to FMS. At the time, CJ had invested a substantial amount of money to make improvements to these restaurants and was in the process of attempting to sell at least two of the restaurants subject, of course, to FMS' approval. FMS filed a three count complaint below on March 12, 1996 for an injunction, breach of contract/accounting, and the recovery of possession of all of the restaurants. Rather than litigate the matter, the parties immediately entered into a stipulation and agreed order which purportedly was to serve as FMS' last act of forbearance. In this stipulation and agreed order, CJ acknowledged its outstanding indebtedness and the parties specifically agreed that beginning March 22, 1994 and ending September 30, 1996, CJ would make twenty-eight weekly payments in the amount of $3,802.44 to satisfy its outstanding indebtedness, and its failure to make any one payment on a timely basis would result in the restaurants being returned to the possession, ownership, and operation by FMS. The stipulation further provided in relevant part that:
* * * * * *
5. [CJ] has received all required Notices of Default and acknowledges that it is in breach of the Agreements, and that there is no remaining opportunity to cure.
6. CJ ... shall deliver cash or a cashier's check in the amount of $3,802.44 payable to FMS.... This amount represents the first of twenty-eight (28) weekly installments....
* * * * * *
8. Additionally, throughout the aforesaid twenty-eight (28) week period and thereafter... [CJ] shall pay ... all sums as they become currently due and owing under the Agreements....
9. [I]n the event of [CJ's] failure to strictly comply on a timely basis with each and every provision ... then it shall deliver the keys of the restaurants to [FMS] and surrender possession ... to [FMS], failing which a Judgment and Writ of Possession shall issue ... [CJ] will refrain from engaging in any business similar to an [IHOP] within a ten (10) mile radius of any of the above eight (8) locations for a period of two years ... [CJ] will refrain from *254 using or divulging any of [FMS's] trade secrets....
After this stipulation and agreed order was executed by the parties and approved by the court, it is undisputed in the record that CJ continued to be delinquent by 2 to 3 weeks in its scheduled payments under the stipulation and that FMS accepted the same. It is also undisputed that notwithstanding the parties' agreement that CJ make its payments in the form of cash or cashier's checks, CJ made and FMS accepted payments by checks. When some of CJ's checks were returned for insufficient funds, FMS allowed them to be replaced by other forms of payment such as cashier's checks. Although FMS subsequently requested in a letter dated August 29, 1996 that CJ make all future payments by cashier's checks, FMS continued to accept CJ's personal checks thereafter.
On October 2, 1996, two days after CJ had made its twenty-eighth payment due under the stipulation, but while CJ was still in arrears on its weekly payments under the license agreement, FMS sought the entry of an ex parte final judgment of possession and injunction. In support thereof, FMS filed the affidavit of its vice-president which averred that contrary to the terms of the stipulation, CJ had repeatedly delivered checks on accounts with insufficient funds, copies of which were attached, and that CJ had failed to make its regular weekly sales and remittance payments for the weeks ending September 1, 9, 15 and 22 pursuant to the license agreements. The lower court entered the final judgment of possession and permanent injunction.
Upon CJ's receipt of the same and writs of possession, it immediately filed its emergency motion to vacate or stay the same. This motion was accompanied by the supporting affidavit of CJ's president who averred, among other things, that the twenty-eight installment payments due under the stipulation had all been paid and that the insufficient funds checks attached to FMS' affidavit did not represent any of the twenty-eight required installments due under the stipulation. It was further averred that all of such checks had been satisfied per agreement with cashier's checks. CJ's affidavit also stated that the sums averred to be due by FMS represented the weekly sales and remittance payments under the license agreements, for which CJ had received no notice of default. According to CJ, it was entitled to such notice since FMS had continuously accepted its late payments under the license agreements, both before and after the stipulation and agreed order. The trial court denied the motion but did give CJ thirty days within which to consummate the sale of the two restaurants. This appeal followed.
CJ contends on this appeal that FMS was estopped from receiving an ex parte final judgment and injunction pursuant to the stipulation and agreed order by virtue of its routine acceptance of CJ's untimely license payments after the stipulation. CJ maintains that in light of FMS acquiescence to such late payments, CJ was at least entitled to notice from FMS of its default and of FMS' intent to strictly adhere to the terms of the stipulation with reference to future payments. We agree.
There is an established body of Florida case law that a creditor may conduct itself in such a manner that it either waives its right to declare a contract in default or is estopped from doing so without first giving the debtor notice of its intent to declare a default. See Commercial Credit Co., Inc. v. Willis, 171 So. 304, 306, 126 Fla. 444, 449-50 (1936); Walker v. Ford Motor Credit Co., 484 So.2d 61, 62-63 (Fla. 1st DCA 1986); Montgomery Enters., Inc. v. Atlantic Nat'l Bank, 338 So.2d 1078, 1080 (Fla. 1st DCA 1976); Raffa v. Dania Bank, 321 So.2d 83, 85-86 (Fla. 4th DCA 1975); Ford Motor Credit Co. v. Waters, 273 So.2d 96, 99-100 (Fla. 3d DCA 1973). Thus for example, in Ford Motor Credit where the seller of an automobile had consistently accepted the buyer's late installment payments over an eighteen (18) month period and had sent at least two (2) late payment notices, but repossessed the automobile without notice to the buyer when the buyer fell two (2) months in arrears, we said:
The facts before us adequately set up a pattern of conduct that would lead the appellee to believe that late payments would be accepted by the appellant and *255 that he would be allowed to catch up in his payment arrears. Notification of a change in this pattern should have been given to appellee by appellant prior to the repossession of the automobile.
273 So.2d at 100. Although Ford Motor Credit was an automobile repossession case, we see no reason why the same principle espoused therein regarding notice of default is not equally applicable to other contractual agreements such as the stipulation before us. See also Smith v. Landy, 402 So.2d 441 (Fla. 3d DCA 1981) (where mortgagee routinely accepted mortgagor's late mortgage payments, mortgagee was estopped from asserting its right to acceleration and foreclosure without first giving mortgagor notice of its intention to declare a default).
It is clear and undisputed that FMS continued to accept payments from CJ two to three weeks after their due dates, notwithstanding the terms of the stipulation between the parties. We think that this practice would have reasonably led CJ to conclude that payments in this manner were not deemed a default under the stipulation and that it would have an opportunity to cure the same prior to the entry of a final judgment. If FMS sought to alter or halt this pattern of payment by CJ, at the very minimum, FMS had a duty to provide notice of the same to FMS prior to seeking an ex parte final judgment pursuant to the terms of the stipulation. We do not suggest by our holding that FMS has waived its right to declare a default under the stipulation agreement for nonpayment. Rather, we conclude only that FMS waived its right to do so without prior notice to CJ.
We therefore reverse the final judgment and vacate the writs of possession entered pursuant thereto and remand for further proceedings.
Reversed.