1998 OK 16

**Jay LUCAS, Appellant,**

**v.**

**Bill BISHOP and Vickie Lynn Bishop, husband and wife, Appellees.**

**No. 82265.**

Supreme Court of Oklahoma.

March 3, 1998.

Robert S. Settles, Antlers, for appellant.

Bob E. Savage, Tishomingo, for appellees.

WATT, Justice.

### FACTS AND PROCEDURAL BACKGROUND

¶ 1 On November 26, 1989 Jay Lucas agreed to sell a house in Bryan County, Oklahoma, to Bill Bishop and Vickie Lynn Bishop under the terms of a contract for deed. The Bishops made a $5,000.00 down payment and agreed to pay a balance of $25,000.00 in $249.97 per month installments with interest at 10% per annum. The contract for deed provided that the Bishops "shall be responsible for ad valorem taxes upon said property." Paragraph 6 of the contract for deed states:

> ... should [the Bishops] fail to make the payments described herein for a period of (3) three months that this agreement shall be considered null and void at the option of [Lucas] and that [Lucas] may retain all payments received, said payments to be considered liquidated damages and further, [the Bishops] agree to give immediate possession of the property to [Lucas].

¶ 2 On May 28, 1992 Lucas sued the Bishops, seeking judgment for the unpaid balance owed under the contract for deed and to foreclose his lien in the property. In their answer the Bishops admitted that "there is an arrearage balance outstanding and owed to Plaintiff." According to a rec-

ord of payments filed by Lucas, the Bishops apparently only paid $150.00 payments each for February and April 1992. The Bishops claim that some of the arrearage on the installment payments, which Lucas claims was $800.00, was made up by money orders, although the Bishops failed to state precisely the amount they admit they have underpaid. The Bishops also admit that Lucas paid the Bishops' ad valorem taxes, $209.97, for 1990. The Bishops claim they tendered a check to the Bryan County Treasurer for the 1990 taxes, which was refused because Lucas had already paid the taxes, but the Bishops did not reimburse Lucas for those taxes. Lucas alleged that he paid the 1990 ad valorem taxes after the Bishops "failed to pay." The Bishops' only excuse for not reimbursing Lucas for the ad valorem taxes is that Lucas paid the taxes without prior notice to the Bishops. The Bishops contend that Lucas has no right to collect the amount he paid in ad valorem taxes from the Bishops but must add it to the unpaid balance due under the contract.

¶ 3  Lucas sought judgment for the entire unpaid balance owed under the contract for deed, which he alleged to be $25,021.29, plus interest on the principal amount owed, plus a $2,500.00 attorneys' fee, and for foreclosure of his lien in the property. The Bishops resisted Lucas's claim on the ground that the prior business conduct of the parties and their business relations equitably estopped Lucas from recovering on his claim. The Bishops also defended on the grounds of laches, and waiver.

¶ 4  The parties agree that Lucas had no right to declare a forfeiture under the contract for deed because of 16 O.S.1991 § 11A, which provides,

All contracts for deed ... made for the purpose of establishing an immediate and continuing right of possession ... shall to that extent be deemed and held mortgages and shall be subject to the same rules of foreclosure ... as are prescribed in relation to mortgages.

Consequently, Lucas was required to foreclose his lien in the Bishop property. There is no dispute concerning the applicability of § 11A here.

¶ 5  The Bishops filed an offer under 12 O.S.1991 § 1101 to allow judgment to be taken against them in the amount of $800.00 plus interest.[1] The Bishops' $800.00 tender did not include either an offer to pay the ad valorem taxes Lucas had paid on their behalf or attorneys' fees. In any event the Bishops point out that the trial court did not rely on § 1101 in entering summary judgment for them. Thus, the Bishops concede that § 1101 is not available to them as a basis for the trial court's having granted their motion for summary judgment.

¶ 6  Both parties moved for summary judgment. The issue was whether the contract for deed allowed Lucas to accelerate the installment payments and declare the entire balance unpaid because the Bishops failed to make payments "for a period of (3) three months." For reasons to be discussed later in this opinion we hold that the Bishops' defaults triggered the "for a period of (3) three months" provision in the contract for deed and that Lucas was, subject to certain limitations, entitled to accelerate the amounts due under its terms.

¶ 7  The trial court originally granted the Bishops motion for summary judgment by minute order dated May 4, 1993. On May 6, 1993 the trial court filed a clarification order in which it held that the contract for deed did not contain an acceleration clause, and that the phrase "for a period of (3) three months" in paragraph 6 required three consecutive missed payments. The trial court also stated in its clarification order that it made no findings concerning any unpaid past due amounts, unpaid ad valorem taxes, or any unpaid amounts that had accrued since the filing of suit.

¶ 8  On June 24, 1993, the Bishops filed a motion for attorneys' fee in the amount of

---

1.  In material part 12 O.S.1991 § 1101 provides:
    The defendant in an action for the recovery of money only, may, at any time before the trial, serve upon the plaintiff or his attorney an offer, in writing, to allow judgment to be taken against him for the sum specified therein.... If the plaintiff fails to obtain judgment for more than was offered by the defendant, he shall pay the defendant's costs from the time of the offer.

$6,352.50 and costs. The Bishops based their motion on Lucas's failure to accept their offer to confess judgment for $800.00 under 12 O.S.1991 § 1101.[2] The Bishops also claimed that 12 O.S.1991 §§ 686 and 936 authorized an attorneys' fee in their favor.[3] Lucas pointed out in his response to the Bishop's motion that because the Bishops offered to have judgment taken against them in an amount less than they actually owed, Lucas, not the Bishops, was entitled to an attorneys' fee. In a supplemental motion the Bishops added 42 O.S.1991 §§ 5 and 176 as statutes they were relying on to support their attorneys' fee claim.[4] The parties agree that the prevailing party in this action will be entitled to an attorneys' fee under §§ 5 and 176.

## DISCUSSION

### I.

*Paragraph 6 of the Contract for Deed Does Not Require That Three Consecutive Payments be Missed Before Foreclosure Proceedings May be Begun.*

■ ¶ 9 The Bishop's claim and the trial court held that under paragraph 6 of the contract for deed three consecutive payments must be missed before the contract for deed is in default. Indeed, the Bishops claim that Lucas had no right to collect the back payments the Bishops owed even after Lucas expressly demanded that the past due payments be paid. We find this claim unconvincing. The Bishops' interpretation would allow the Bishops to avoid default and foreclosure by paying one monthly payment, missing two, paying one, missing two more, and so on for the life of the contract for deed.

We reject the Bishops interpretation and hold that the clear intent of the parties in making the contract was that three instances of nonpayment or underpayment, whether consecutive or not would be sufficient to trigger the terms of paragraph 6. We further hold that Lucas had the right to expressly demand that the Bishops bring all back payments current.

¶ 10. Contract interpretation is governed by statute in Oklahoma:

The words of a contract are to be understood in their ordinary and popular sense rather than according to their strict legal meaning, unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed.

15 O.S.1991 § 160.

■ ¶ 11 When construing the term "for a period of (3) three months" in the contract for deed, the term "must be viewed in the context of the contract and must be given its plain ordinary meaning" as required by 15 O.S.1991 § 160. *Kerr–McGee Corp. v. Admiral Ins. Co.*, 1995 OK 102 ¶ 11, 905 P.2d 760. Lucas made a prima facie showing that the Bishops missed two full payments, and underpaid two other installments, in addition to not having paid one year's ad valorem taxes. In the face of the Bishops' multiple defaults we cannot accept their argument that, as a matter of law, Lucas had no right to demand that they be paid despite those defaults. The trial court erred in holding otherwise.[5]

¶ 12 The Bishops apparently failed to bring themselves current under the contract

---

2. See Note 1 for the text of the relevant portions of 12 O.S.1991 § 1101.

3. Title 12 O.S.1991 § 686 provides that in actions to enforce a mortgage or other lien the court shall tax the attorneys' fees and expenses "which may accrue in the action." Title 12 O.S.1991 § 936 allows an attorneys' fee to the prevailing party in an action to recover on an account, note, or "contract relating to the purchase or sale of goods, wares, or merchandise."

4. Title 42 O.S.1991 § 5 provides, "Contracts of mortgage and pledge are subject to all the provisions of this chapter." 42 O.S.1991 § 176 provides, "In an action brought to enforce any lien the party for whom judgment is rendered shall be entitled to recover a reasonable attorney's fee to be fixed by the court, which shall be taxed as costs in the action."

5. The trial court also held that Lucas could not charge the Bishops $20.00 for each bad check the Bishops delivered to him because the contract for deed did not call for any such charges. We agree. Lucas would be entitled to reimbursement for amounts his bank charged him, if any, for the insufficient funds checks, but not more.

for deed even after Lucas filed suit against them. Because the trial court erred in entering summary judgment for the Bishops it also erred in granting them an attorneys' fee because the Bishops were not the prevailing party.

## II.

*Disputed Issues of Material Fact Must be Resolved Before a Determination Can Be Made as to Whether Lucas is Entitled to Foreclose his Lien in the Property.*

¶ 13 Neither party's motion for summary judgment can be granted here as there remains unresolved the issue of whether, in the first instance, Lucas waived the Bishops' prompt payment of the $800.00 in missed payments and under payments and $209.97 in ad valorem taxes. A defendant in a foreclosure action who asserts the defense of waiver is entitled to have a determination made concerning whether late payments have been waived before the property is sold at foreclosure sale. *Federal Deposit Ins. Corp. v. Tidwell*, 1991 OK 119, 820 P.2d 1338.

¶ 14 Even if established, the defense of waiver waives only the debtor's failure to pay in the first instance. We have not previously addressed the question of what right a debtor has to declare a default under circumstances such as those present here, where the creditor has accepted late payments and partial payments without declaring a default.

¶ 15 We conclude that the fairest way to deal with a waiver of prompt payment is to hold that the creditor has not waived his right to declare a default, only that he waived his right to do so without notice that would give the debtor a reasonable time to cure the default before foreclosure would be appropriate. This approach is used in the Florida courts. *CJ Restaurant Enterprises, Inc. v. FMS Management Systems, Inc.*, 699 So.2d 252 (Fla.App.1997), where the court held that the debtor should have the opportunity to cure its default where the creditor had accelerated the mortgage and sought foreclosure without prior notice. The court held, however:

We do not suggest by our holding that [the creditor] FMS has waived its right to declare a default under the stipulation agreement for nonpayment. Rather, we conclude only that FMS waived its right to do so without prior notice to [the debtor] CJ.

¶ 16 The Bishops did not pay in accordance with the terms of their agreement with Lucas, and Lucas was entitled to demand that the Bishops cure the default at any time. Thus, although Lucas may have waived the requirement of prompt payment in the first instance, Lucas was entitled to demand at a later date that the default be cured, and did so by suing the Bishops. The trial court, however, may give the Bishops the opportunity to pay the arrearage and avoid foreclosure.

¶ 17 The record does not make entirely clear whether the Bishops made up the payments they missed, and clearly reflects that they did not repay the 1990 ad valorem taxes after Lucas filed suit. The Bishop's have, apparently, paid as agreed in the contract for deed since Lucas filed suit.

¶ 18 Lucas's suit made clear his insistence that the Bishops both make up the late payments and reimburse Lucas for the ad valorem taxes. Thus, Lucas will be the prevailing party and could be entitled to an attorneys' fee under 42 O.S.1991 § 176. Nevertheless, the trial court may as a matter of equity, and to avoid a forfeiture, allow the Bishops to make up the late payments, and ad valorem taxes with interest, and reinstate the contract for deed, rather than order the property sold at foreclosure sale. This will be a matter within the trial court's discretion. The amount to be awarded Lucas for attorneys' fees is also within the discretion of the trial court.

CERTIORARI PREVIOUSLY GRANTED, COURT OF CIVIL APPEALS OPINION VACATED, JUDGMENT OF THE TRIAL COURT REVERSED AND MATTER REMANDED WITH INSTRUCTIONS.

¶ 19 SUMMERS, V.C.J., HODGES, LAVENDER, ALMA WILSON, and WATT, JJ., concur.

¶ 20 KAUGER, C.J., concurs in part; dissents in part.

¶ 21 HARGRAVE, J., dissents.

¶ 22 OPALA, Justice, with whom SIMMS, J., joins, dissenting.

I would confine this court's certiorari review to the correctness of the counsel-fee award. *That was the only timely-appealed district court ruling.* See *Lucas v. Bishop,* 1995 OK 7, 890 P.2d 411, 412–16 (Opala, J., dissenting in part).