1999 OK 50

OSPREY L.L.C., a limited liability company, Plaintiff/Appellant,

v.

KELLY–MOORE PAINT CO. INC., a California corporation, Defendant/Appellee.

No. 90,206.

Supreme Court of Oklahoma.

May 25, 1999.

Anton J. Rupert, Oklahoma City, for Plaintiff/Appellant.

Darian B. Anderson, Edmond, for Defendant/Appellee.

¶1 KAUGER, J.:

¶2 The first impression question presented is whether a faxed or facsimile delivery of a written notice renewing a commercial lease is sufficient to exercise timely the renewal option of the lease. Under the facts presented, we hold that it is.

## ¶3 FACTS

¶4 The appellant, Osprey, an Oklahoma limited liability company (Osprey), owns commercial property in Edmond, Oklahoma. On March 18, 1977, the appellee, Kelly–Moore Paint Company (Kelly–Moore), a California corporation, negotiated a fifteen-year lease for its Edmond, Oklahoma, store with Osprey's predecessors James and Victoria Fulmer.[1] The lease contained two five-year renewal options which required that the lessee give notice of its intent to renew the lease at least six months prior to its expiration date. The lease also provided that all notices "shall be given in writing and may be delivered either personally or by depositing the same in United States mail, first class postage prepaid, registered or certified mail, return receipt requested."

¶5 It is undisputed that after the first fifteen years, Kelly–Moore timely informed Osprey's predecessors by certified letter of its intent to extend the lease an additional five years. The first five-year extension was due to expire on August 31, 1997. According to the property manager of Kelly–Moore, she telephoned one of the owners of Osprey in January of 1997, to inform him that Kelly–

---

1. The appellant, Osprey, assumed ownership of the property in December of 1996.

Moore intended to extend its lease for the remaining five-year period. On Friday, February 28, 1997, the last day of the six-month notification deadline, Kelly–Moore faxed a letter of renewal notice to Osprey's office at 5:28 p.m., Oklahoma time. Kelly–Moore also sent a copy of the faxed renewal notice letter by Federal Express the same day.

¶ 6 Although the fax activity report and telephone company records confirm that the fax was transmitted successfully and that it was sent to Osprey's correct facsimile number, Osprey denies ever receiving the fax. The Federal Express copy of the notice was scheduled for delivery on Saturday, March 1, 1997. However, Osprey actually received it on Monday, March 3, 1997. In a letter dated March 6, 1997, Osprey acknowledged that it had received Kelly–Moore's Federal Express notice; denied that the notice was timely according to the terms of the lease; and it rejected the notice as untimely. In July of 1997, Osprey wrote Kelly–Moore reminding it to vacate the premises by August 31, 1997. Kelly–Moore refused to vacate, insisting that it had effectively extended the lease term for the remaining five years.

¶ 7 On September 2, 1997, Osprey filed an action for forcible entry and detainer in the district court of Oklahoma County. It alleged that Kelly–Moore wrongfully possessed the property and that it refused to vacate the premises. Kelly–Moore argued that it was entitled to possession of the property because of its timely renewal of the lease. After a trial on the merits, the trial court granted judgment in favor of Kelly–Moore, finding that the faxed notice was effective. Osprey appealed. The Court of Civil Appeals reversed, determining that the plain language of the lease required that it be renewed for an additional term by delivering notice either personally or by mail, and that Kelly–Moore had done neither. We granted certiorari on April 13, 1999, to address the question of first impression.

¶ 8 **UNDER THE FACTS PRESENTED, THE FAXED DELIVERY OF THE WRITTEN NOTICE OF RENEWAL TIMELY EXERCISED THE RENEWAL OPTION OF THE LEASE.**

¶ 9 The precise issue of whether a faxed or facsimile delivery of a written notice to renew a commercial lease is sufficient to exercise timely the renewal option of the lease is one of first impression in Oklahoma. Neither party has cited to a case from another jurisdiction which has decided this question, or to any case which has specifically defined "personal delivery" as including facsimile delivery.

¶ 10 The contested portions of the lease provide in pertinent part:

"... 20. OPTION TO RENEW....The Lessee must, in order to exercise each such renewal option give to the Lessor at least six (6) months prior to the expiration of the term hereof or the extended term, written notice of the Lessee's intention to renew this lease as by this paragraph provided....

. . .

26. NOTICES. All notices required to be given hereunder by Lessee or Lessor *shall* be given in writing and *may* be delivered either personally or by depositing the same in the United States mail, first class postage prepaid, registered or certified mail, return receipt requested, addressed to the party to receive the same at that party's address hereinabove first written or to such changed address as the party may have from time to time during the term hereof notified the other party. Notices which are mailed shall be deemed delivered three (3) days after having been deposited in the United States mail as herein.

. . .

29. TIME. Time is hereby expressly declared to be the essence of this lease and of all the covenants, agreements, terms, conditions, restrictions and obligations herein contained." (Emphasis supplied)

¶ 11 Osprey argues that: 1) the lease specifically prescribed limited means of acceptance of the option, and it required that the notice of renewal be delivered either personally or sent by United States mail, registered or certified; 2) Kelly–Moore failed to follow the contractual requirements of the lease when it delivered its notice by fax; and

3) because the terms for extending the lease specified in the contract were not met, the notice was invalid and the lease expired on August 31, 1997. Kelly–Moore counters that: 1) the lease by the use of the word "shall" mandates that the notice be written, but the use of the word "may" is permissive; and 2) although the notice provision of the lease permits delivery personally or by United States mail, it does not exclude other modes of delivery or transmission which would include delivery by facsimile. Kelly–Moore also asserts that the lease specified that time was of the essence and that faxing the notice

was the functional equivalent of personal delivery because it provided virtually instantaneous communication.

¶ 12 Although the question tendered is novel in Oklahoma, the sufficiency of the notice given when exercising an option contract or an option to renew or extend a lease has been considered by several jurisdictions.[2] A few have found that delivery of notice by means other than hand delivery or by certified or registered mail was insufficient if the terms of the contract specifically referred to the method of delivery.[3] However, the majority have reached the opposite conclusion.[4]

2. See generally, William B. Johnson, Annot., "Sufficiency as to Parties Giving or Receiving Notice of Exercise of Option to Renew or Extend Lease," 34 A.L.R.4th 857 (1984); William B. Johnson, Annot., "Sufficiency as to Method of Giving Oral or Written Notice Exercising Option to Renew or Extend Lease," 29 A.L.R.4th 903 (1984); William B. Johnson, Annot., "Circumstances Excusing Lessee's Failure to Give Timely Notice of Exercise of Option to Renew or Extend Lease," 27 A.L.R.4th 266 (1984).

3. A few courts have held alternative methods of delivery insufficient. See, e.g., *Western Tire, Inc. v. Skrede*, 307 N.W.2d 558, 29 A.L.R.4th 948 (N.D.1981) (Notice sent by ordinary mail, rather than certified mail was inadequate to exercise renewal option in lease where both the manner and time requirements of the lease were not met.); *Hemmerich v. Southeast Properties Group, LP*, 230 Ga.App. 697, 698–99, 498 S.E.2d 87, 88–89 (1998) (Tenant did not substantially comply with lease terms in delivering written notice by placing it on property manager's desk.); *Crown Construction Co., Inc. v. Huddleston*, 961 S.W.2d 552, 556 (Tex.Ct.App.1997) ("[P]ersonal delivery" of notice of renewal of commercial lease did not include taping notice of renewal to lessor's door when lease provided for notice either by personal delivery or by certified mail .). See also, *Davies, Turner & Co. v. United States*, 57 Cust.Ct. 55, 256 F.Supp. 379 (1966) (Deposit of notices of appraisements in receptacles maintained in customs collector's office were not "personal delivery" under the Tariff Act.).

4. A majority of courts considered, among other factors, whether an alternative method of delivery of notice was otherwise timely or whether the method used was the functional equivalent of a prescribed method. *Bombach v. Battershell*, 105 N.M. 625, 627, 735 P.2d 1131, 1133 (1987) (Delivery of a notice of termination of a lease by hand-delivering it to the lessees' place of business where it was left with an employee satisfied the purpose of notice provisions in the lease agreement.); *Fletcher v. Frisbee*, 119 N.H. 555, 559, 404 A.2d 1106, 1109 (1979) (Notice sent by regular mail rather than registered mail, after

discovery that 30–day deadline was just missed. Equity gives relief to a lessee who had failed to exercise the option within the required time if: 1) the delay was slight and the result of an accident or an honest mistake; 2) the delay has not prejudiced the landlord; and 3) the failure to grant relief would result in such hardship to the tenant as to make literal enforcement of the renewal provision unconscionable.); *Kiriakides v. United Artists Communications, Inc.*, 307 S.C. 72, 74, 413 S.E.2d 850, 851 (S.C.Ct.App.1992), affirmed on other grounds by *Kiriakides v. United Artists Communications, Inc.*, 312 S.C. 271, 440 S.E.2d 364 (1994) (Lease notice provisions were substantially complied with when sent to an incorrect address.); *General Telephone Co. of the Northwest v. C–3 Associates*, 32 Wash.App. 550, 551, 648 P.2d 491, 491 (1982) (Hand-delivered notice sufficient where the lease required that the written notice to exercise the option to renew be delivered by registered mail.); *Korey v. Sheff*, 3 Mass.App.Ct. 266, 327 N.E.2d 896, 897 (1975) (Lease provision that provided notice must be given by registered mail did not require that written notice be sent by registered mail, to the exclusion of other modes of transmission, in order to effectively exercise the option to renew.); *Gerson Realty Inc. v. Casaly*, 2 Mass.App.Ct. 875, 316 N.E.2d 767, 767–68 (1974) (Although lease provided for renewal notice by registered mail, notice by certified mail was effective where fact and timeliness of delivery were admitted.); *University Realty & Development Co. v. OMID–GAF, Inc.*, 19 Ariz.App. 488, 508 P.2d 747, 749 (1973) (Despite the contention that there must be strict compliance with the terms of an option agreement, lease renewal option contained in the lease was properly exercised though notice was hand delivered rather than sent by registered mail.); *243 So. Harrison Street Corp. v. Ogust*, 113 N.J.Super. 74, 77, 272 A.2d 578, 580 (1971) (Use of certified mail instead of registered mail was sufficient. It analogized that in contract law, an acceptance by an unauthorized means is effective if received in time, and that it should not require strict compliance with the provisions of the lease that the notice be given by registered mail because use of registered mail was not essential to

These courts generally recognize that, despite the contention that there must be strict compliance with the notice terms of a lease option agreement, use of an alternative method does not render the notice defective if the substituted method performed the same function or served the same purpose as the authorized method.[5]

¶ 13 A lease is a contract and in construing a lease, the usual rules for the interpretation of contractual writings apply.[6] Generally, the terms of the parties' contract, if unambiguous, clear, and consistent, are accepted in their plain and ordinary sense and the contract will be enforced to carry out the intention of the parties as it existed at the time the contract was negotiated.[7] The interpretation of a contract, and whether it is ambiguous is a matter of law for the Court to determine and resolve.[8]

the contract.); *Woods v. Cities Service Oil Company*, 142 So.2d 168 (La.Ct.App.1962) (Lease required that written notice be delivered by registered mail. However, notice of the renewal was sent by telegraph within the time permitted by the contract. Substituted method performed the same function and served the same purpose as the authorized method. Use of a different method of transmission of notice of renewal than that contemplated by the lease does not, if timely received make the notice defective.); *East Eighty–Second St. Corp. v. Rogers*, 192 A.D. 633, 183 N.Y.S. 297, 299 (1920) (Where lease provided for renewal by registered mail, renewal sent by unregistered letter was sufficient.). Court have also addressed the sufficiency of notice in other circumstances as well. See also, *Patry v. Capps*, 633 So.2d 9, 12 (1994) (Timely written notice to initiate medical malpractice action was sufficient, even though notice served by hand, rather than certified mail.); *People v. Hagan*, 145 Ill.2d 287, 301, 583 N.E.2d 494, 500, 164 Ill.Dec. 578, 584 (1991) (Defendant's letter was delivered for venue purposes, recognized that there was sufficient evidence to support the trial court's conclusion that the defendant delivered the letter when he "released," "surrendered," or "handed over" the letter to be faxed.); *Nafstad v. Merchant*, 303 Minn. 569, 228 N.W.2d 548 (1975) (Option to purchase real estate had been received by the vendors and notice by regular mail was in substantial compliance with the terms of the option contract.); *Denis F. McKenna Co. v. Smith*, 302 Ill.App.3d 28, 235 Ill.Dec. 253, 256, 704 N.E.2d 826, 829 (1998) (Notice of rejection of a purchase of a home which was sent to the purchaser's agent, rather than the purchaser as required by the contract was not a material breach of the contract. Purpose of a contract's notice provision is to ensure that the notice was delivered and that the party was informed.); *Christy v. Premo*, 194 A.D.2d 910, 911, 599 N.Y.S.2d 307 (1993) (Prospective purchasers of a house were entitled to specific performance following the vendor's failure to cancel the contract of sale by personal delivery of notice or use of certified mail. The Court held that the purchasers were not entitled to specific performance because they had actual notice of the contract's cancellation through facsimile and conventional mail.); *Gulf Industries, Inc. v. Hahn*, 156 Ariz. 153, 154, 750 P.2d 911, 912 (Ariz.Ct.App.1988) (Delivery of written notice of cancellation placed into an office mail slot was personal delivery and notice requirements of Home Solicitations and Referral Sales Act were met.); *Getty Refining and Marketing Co. v. H.F. Zwiebel*, 604 F.Supp. 774, 777 (D.Conn.1985) (Though the purchase option provision specified that notices were to be deemed duly given if forwarded by registered mail, letter sent by certified mail, return receipt requested, satisfied requirements. The lease didn't prohibit other methods from being used for notice.).

5. Several courts have recognized that the requirement that the notice be written was the only material condition regarding exercising the option, and that the wording regarding the type of delivery pertained to an optional manner of exercise, not an absolute requirement. *Nafstad v. Merchant*, see note 4, supra; *Korey v. Sheff*, see note 4, supra; *Denis F. McKenna Co. v. Smith*, see note 4, supra; *243 So. Harrison Street Corp. v. Ogust*, see note 4, supra; *Getty Refining and Marketing Co. v. H.F. Zwiebel*, see note 4, supra. Other courts have determined that if a substituted method performed the same function or purpose as a prescribed method notice is considered timely. *Bombach v. Battershell*, see note 4, supra; *Fletcher v. Frisbee*, see note 4, supra; *General Telephone Co. of the Northwest v. C–3 Associates*, see note 4, supra; *Woods v. Cities Service Oil Company*, see note 4, supra; *Christy v. Premo*, see note 4, supra.

6. *Mercury Inv. Co. v. F.W. Woolworth, Co.*, 1985 OK 38, ¶ 8, 706 P.2d 523, 529; *Ferguson v. Dist. Ct. of Okla. County*, 1975 OK 167, ¶ 6, 544 P.2d 498, 499; *Sublett v. City of Tulsa*, 1965 OK 78, ¶ 53, 405 P.2d 185, 200; *Tipton v. North*, 1939 OK ——, 92 P.2d 364, 368.

7. Title 15 O.S.1991 § 152; 15 O.S.1991 § 154; *Mercury Inv. Co. v. F.W. Woolworth, Co.*, see note 6, supra at ¶ 9; *Prudential Ins. Co. of America v. Glass*, 1998 OK 52, ¶ 19, 959 P.2d 586, 594; *Dodson v. St. Paul Ins. Co.*, 1991 OK 24, ¶ 12, 812 P.2d 372, 376.

8. *Prudential Ins. Co. of America v. Glass*, see note 7, supra; *Mercury Inv. Co. v. F.W. Woolworth, Co.*, see note 6, supra; *Dodson v. St. Paul Ins. Co.*, note 7, supra; *Corbett v. Combined Communications Corp. of Okla., Inc.*, 1982 OK 135, ¶ 5, 654 P.2d 616, 617.

¶ 14 Language in a contract is given its plain and ordinary meaning, unless some technical term is used in a manner meant to convey a specific technical concept.[9] A contract term is ambiguous only if it can be interpreted as having two different meanings.[10] Nevertheless, the Court will not create an ambiguity by using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on provision.[11] The lease does not appear to be ambiguous. "Shall" is ordinarily construed as mandatory and "may" is ordinarily construed as permissive.[12] The contract clearly requires that notice "shall" be in writing. The provision for delivery, either personally or by certified or registered mail, uses the permissive "may" and it does not bar other modes of transmission which are just as effective.

¶ 15 The purpose of providing notice by personal delivery or registered mail is to insure the delivery of the notice, and to settle any dispute which might arise between the parties concerning whether the notice was received.[13] A substituted method of notice which performs the same function and serves the same purpose as an authorized method of notice is not defective.[14] Here, the contract provided that time was of the essence.[15] Although Osprey denies that it ever received the fax, the fax activity report and telephone company records confirm that the fax was transmitted successfully, and that it was sent to Osprey's correct facsimile number on the last day of the deadline to extend the lease. The fax provided immediate written communication similar to personal delivery and, like a telegram, would be timely if it were properly transmitted before the expiration of the deadline to renew.[16]

9. Title 15 O.S.1991 § 160; *Lucas v. Bishop*, 1998 OK 16, ¶ 11, 956 P.2d 871, 874; *Kerr–McGee Corp. v. Admiral Ins. Co.*, 1995 OK 102, ¶ 11, 905 P.2d 760; *Mercury Inv. Co. v. F.W. Woolworth, Co.*, see note 6, supra.

10. *Littlefield v. State Farm Fire & Casuality Co.*, 1993 OK 102, ¶ 7, 857 P.2d 65, 68.

11. *Wynn v. Avemco Ins. Co.*, 1998 OK 75, 963 P.2d 572, 575; *Pierce Couch, Hendrickson, Baysinger & Green v. Freede*, 1997 OK 33, ¶ 21, 936 P.2d 906, 911; *Dodson v. St. Paul Ins. Co.*, note 7, supra.

12. In *Ash v. Chas. F. Noble Oil & Gas Co.*, 1924 OK ——, 223 P. 175, 179, we recognized that "shall" is ordinarily mandatory and not permissive. We said, regarding the use of the word "shall" in a contract, that "when used in a contract in connection with the duty to be performed, [it] is used in an imperative rather than a permissive sense and imposes an obligation to discharge such duties." Likewise, when interpreting statutes, we said in *Woods Development Co. v. Meurer Abstract*, 1985 OK 106, ¶ 11, 712 P.2d 30 that "[a] long-standing rule of construction in this jurisdiction is that 'may' generally denotes permissive or discretional, *Shea v. Shea*, 537 P.2d 417, 418 (Okla.1975), while 'shall' is ordinarily interpreted as implying a command or mandate. *Sneed v. Sneed*, 585 P.2d 1363, 1364 (Okla.1978)." Osprey insists that pursuant to 15 O.S.1991 § 68, Kelly–Moore was required to comply with the delivery methods prescribed by the lease. Title 15 O.S.1991 § 68 provides:

"If a proposal prescribes any conditions concerning the communication of its acceptance, the proposer is not bound unless they are con-

formed to, but in other cases any reasonable and usual mode may be adopted."
We disagree with Osprey that this statute is helpful here because the lease provision concerned uses the permissive "may" rather than the mandatory "shall" and refers to personal delivery or registered or certified mail, but does not require these methods of delivery, to the exclusion of other modes of transmission which serve the same purpose.

13. *Bombach v. Battershell*, see note 4, supra; *Fletcher v. Frisbee*, see note 4, supra; *General Telephone Co. of the Northwest v. C–3 Associates*, see note 4, supra; *Korey v. Sheff*, see note 4, supra; *243 So. Harrison Street Corp. v. Ogust*, see note 4, supra; *Woods v. Cities Service Oil Company*, see note 4, supra; *Nafstad v. Merchant*, see note 4, supra; *Denis F. McKenna Co. v. Smith*, see note 4, supra; *Christy v. Premo*, see note 4, supra; *Getty Refining and Marketing Co. v. H.F. Zwiebel*, see note 4, supra.

14. *Id.*

15. See, paragraph 29 of the lease, p. 4, supra.

16. The *Restatement (Second) of Contracts* § 64 (1979) provides:

"Acceptance given by telephone or other medium of substantially instantaneous two-way communication is governed by the principles applicable to acceptances where the parties are in the presence of each other."
The Restatement (Second) of Contracts § 63(b) (1979) provides that unless the offer provides otherwise, an acceptance under an option contract is not operative until received by the offeror. However, in *Worms v. Burgess*, 1980 OK CIV

Kelly–Moore's use of the fax served the same function and the same purpose as the two methods suggested by the lease and it was transmitted before the expiration of the deadline to renew. Under these facts, we hold that the faxed or facsimile delivery of the written notice to renew the commercial lease was sufficient to exercise timely the renewal option of the lease.

## ¶ 16 CONCLUSION

¶ 17 Use of an alternative method of notification of the exercise of a lease option does not render the notice defective if the substituted notice performed the same function or served the same purpose as the authorized method.[17] Here, the lease provision concerned uses the permissive "may" rather than the mandatory "shall" and refers to personal delivery or registered or certified mail, but it does not require these methods of delivery, to the exclusion of other modes of transmission which serve the same purpose.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT AFFIRMED.**

SUMMERS, C.J., HODGES, LAVENDER, OPALA, ALMA WILSON, and WATT, JJ., concur.

HARGRAVE, V.C.J, and SIMMS, J., dissent.

APP 1,¶ 14, 620 P.2d 455, 458–59, a case in which this Court approved for publication, the Court of Civil Appeals addressed the acceptance of an option contract under Oklahoma law. The court determined that where an optionee to an option contract mailed notice of exercise before the date required in the contract, the option was properly exercised, even though the optionor never received the notice. *Worms* is persuasive here where the fax log and telephone records show that the notice was properly transmitted to Osprey. Transmitting the fax was like mailing an acceptance under the mailbox rule, where an offer is accepted when it is deposited in the mail. See, *Woody v. State, ex rel. Dept. of Corrections,* 1992 OK 45, ¶ 4, 833 P.2d 257, 258. Similarly, in *Western Union Telegraph Co. v. Wheeler,* 1926 OK ——, 245 P. 39, 40, 47 A.L.R 156, we recog-

nized that delivery to the telegram company for transmission of a telegram for accepting the offer was deemed acceptance, rather than receipt of the telegram. Like the telegram, the facsimile, under the facts presented here, would be deemed accepted when transmitted.

17. *Bombach v. Battershell,* see note 4, supra; *Fletcher v. Frisbee,* see note 4, supra; *General Telephone Co. of the Northwest v. C-3 Associates,* see note 4, supra; *Korey v. Sheff,* see note 4, supra; *243 So. Harrison Street Corp. v. Ogust,* see note 4, supra; *Woods v. Cities Service Oil Company,* see note 4, supra; *Nafstad v. Merchant,* see note 4, supra; *Denis F. McKenna Co. v. Smith,* see note 4, supra; *Christy v. Premo,* see note 4, supra; *Getty Refining and Marketing Co. v. H.F. Zwiebel,* see note 4, supra.