FILED
United States Court of Appeals
Tenth Circuit

November 5, 2020

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MASSOUD SAGHIAN,

      Plaintiff - Appellee,

v.

AVRAHAM SHEMUELIAN; E&E
CAPITAL INC.; STRYKER BUILDING
LLC, f/k/a Lawyer's Title Building L.L.C.,

      Defendants - Appellants.

No. 19-6181
(D.C. No. 5:15-CV-00701-PRW)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **MURPHY** and **PHILLIPS**, Circuit Judges.
_____

In this breach-of-contract case, defendants—Avraham Shemuelian,

E&E Capital, Inc., and Stryker Building, L.L.C.—appeal the district court's summary

judgment for plaintiff—Massoud Saghian.  We affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. Background

Shemuelian wanted to buy property in Oklahoma City. Looking to raise money, he contacted Saghian, his uncle. They orally agreed that Saghian would initially provide Shemuelian $215,000 and would receive twenty-five percent of the profits from the company that held title to the property, Lawyer's Title Building, L.L.C. (LTB); twenty-five percent of the membership units of LTB; and twenty-five percent of the proceeds if the property was sold.[1]

A few years later, Saghian and Shemuelian put their agreement in writing with the help of a lawyer. This effort yielded three documents: a loan agreement, a convertible promissory note, and a security agreement. The "Loan Documents" superseded "and replace[d] all prior negotiations and written and oral agreements." Aplt. App. vol. 1 at 98. According to the loan agreement, Saghian agreed to lend Shemuelian and E&E Capital, Inc. $375,000 without interest. The documents establish that receivership proceedings by or against Shemuelian or LTB amount to a default. And a default allows Saghian to declare the promissory note "immediately due and payable." *Id.* The promissory note in turn requires, upon demand, that Shemuelian and E&E Capital, Inc. "cause [the] Note to be converted into such number of Units of [LTB] . . . such that after the conversion, [Saghian] shall be the owner and holder of fifty percent (50%) of the outstanding Units of [LTB]." *Id.* at 100.

---

[1] LTB has changed its name to Stryker Building, L.L.C. For simplicity's sake, we will call it LTB throughout this order and judgment.

After an Oklahoma state court appointed a receiver over LTB, and defendants refused Saghian's demand to assign him fifty percent of the outstanding units in LTB, Saghian brought this lawsuit. The district court granted summary judgment to Saghian and entered a foreclosure judgment over membership units of LTB to "render Plaintiff the owner and holder of 50% of all outstanding membership Units." *Id.* vol. 2 at 280. Defendants appeal.

## II. Discussion

We review de novo a district court's decision to grant summary judgment, applying the same standard governing the district court. *Rivero v. Bd. of Regents of Univ. of N.M.*, 950 F.3d 754, 758 (10th Cir. 2020). Courts must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We view all facts and evidence in the light most favorable to the party opposing summary judgment." *Craft Smith, LLC v. EC Design, LLC*, 969 F.3d 1092, 1099 (10th Cir. 2020) (internal quotation marks omitted).

### A. There is no genuine dispute over a material fact.

Defendants admitted in both their answer and their amended answer that "Plaintiff loaned E&E Capital the sum of $375,000." Aplt. App. vol. 1 at 24; Aplee. App. at 22. Without seeking leave to withdraw or amend that admission, they contradicted it in their response opposing summary judgment, claiming that Saghian gave them only $302,255 and that they repaid that full amount. To support their claim that Saghian did not give them the full $375,000, they cited portions of

3

Saghian's deposition testimony and an affidavit by Shemuelian. Despite this evidence, the district court concluded that defendants did not create a genuine dispute over the amount that Saghian gave them because their earlier admissions that he gave them $375,000 remained binding judicial admissions.

On appeal, defendants do not even mention the district court's decision to hold them to their admissions that Saghian provided $375,000, let alone attempt to explain why that decision was wrong. Yet they contend that a genuine dispute exists over how much money Saghian gave them because, if a jury believes their evidence, it could find for them on two theories:

- Saghian failed to perform under the contract by giving them less than $375,000, so he had no right to demand payment in membership units.

- Defendants performed by repaying the full amount that Saghian gave them, so no default occurred.

The district court correctly bound defendants to their admissions that Saghian provided $375,000, leaving no genuine dispute over that fact. "As a rule, admissions in the pleadings are in the nature of judicial admissions binding upon the parties, unless withdrawn or amended." *Mo. Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306, 1314 (8th Cir. 1990) (brackets, ellipsis, and internal quotation marks omitted). And "even if the post-pleading evidence conflicts with the evidence in the pleadings, admissions in the pleadings are binding on the parties and may support summary judgment against the party making such admissions." *Id.* at 1315; *see also Jones v. Morehead*, 68 U.S. (1 Wall.) 155, 165 (1863) ("It would be subversive of all sound

4

practice, and tend largely to defeat the ends of justice, if the court should refuse to accept a fact as settled, which is distinctly alleged in the bill, and admitted in the answer."). So defendants' attempt to disavow their admission that Saghian provided $375,000 "with seemingly contrary evidence at summary judgment does not create a disputed issue of fact." *Grynberg v. Bar S Servs., Inc.*, 527 F. App'x 736, 739 (10th Cir. 2013) (unpublished).[2]

## B. The loan documents are unambiguous.

The district court concluded that the loan documents demonstrate "a clear intent to permit [Saghian] the option to require payment in the form of converted equity in LTB." Aplt. App. vol. 2 at 273. Challenging this construction, defendants argue "the writings evidence a loan which—*only* if the Borrowers failed to pay upon demand—required conversion of the Note into units of ownership in" LTB. Aplt. Br. at 14. At a minimum, they say, the loan documents are ambiguous, requiring extrinsic evidence to reveal the parties' intent.

Whether a contract is ambiguous and therefore requires extrinsic evidence to clarify it is a question of law. *Pitco Prod. Co. v. Chaparral Energy, Inc.*, 63 P.3d 541, 545 (Okla. 2003).[3] "A contract term is ambiguous only if it can be interpreted as having two different meanings." *Osprey L.L.C. v. Kelly-Moore Paint Co.*, 984 P.2d 194, 199 (Okla. 1999). Courts must "not create an ambiguity by using a

---

[2] We cite *Grynberg*, an unpublished case, for its persuasive value. *See* 10th Cir. R. 32.1(A).

[3] The parties seem to agree, and we concur, that we should construe the contract under Oklahoma law.

forced or strained construction, by taking a provision out of context, or by narrowly focusing on [a] provision." *Id.*

Several provisions cause us to agree with the district court that the loan documents unambiguously require payment through converted units of LTB. First, the loan agreement states, "The entire unpaid principal balance shall be due and payable on the Loan Maturity Date by conversion into Units of [LTB] . . . ." Aplt. App. vol. 1 at 94. Second, the loan agreement requires the promissory note to provide "for the conversion of the Note, in full upon demand, into such number of Units of [LTB] such that after the conversion, [Saghian] shall be the owner and holder of fifty percent (50%) of the outstanding Units of [LTB]." *Id.* Third, the promissory note does just that, stating, "Upon demand, Borrowers shall . . . cause this Note to be converted into such number of Units of [LTB] . . . such that after the conversion, [Saghian] shall be the owner and holder of fifty percent (50%) of the outstanding Units of [LTB]," and clarifying that the "Note shall otherwise be non-recourse as to any cash sums due hereunder." *Id.* at 100. And fourth, the promissory note expressly articulates the parties' intent: "It is the intention of the parties hereunder that this Note may only be repaid by conversion of the indebtedness due hereunder to fifty percent (50%) of the then total outstanding Units of [LTB]." *Id.* at 102.

To support their position that the loan documents are ambiguous, defendants point out that Saghian has "variously characterized" them as describing both a loan and a capital contribution. Aplt. Br. at 11. And they reason that, if the documents

6

did not allow them to repay the loan with cash rather than equity, there would be no need to specify that the loan was without interest or to mention "'any cash sums due.'" *Id.* at 15. These points are fair enough, but they still do not create any ambiguity over how the parties intended the loan to be repaid: the loan documents declare that intent plainly—the note "may only be repaid by conversion of the indebtedness" to units of LTB. Aplt. App. vol. 1 at 102. In the face of this language, finding an ambiguity requires a strained construction.

### III. Conclusion

The district court's judgment is affirmed.

Entered for the Court


Michael R. Murphy
Circuit Judge