SOUTHERN OKLAHOMA HEALTH CARE CORPORATION d/b/a Memorial Hospital of Southern Oklahoma, Appellee,

v.

JHBR–JONES–HESTER–BATES–RIEK, INC., Appellant.

No. 84694.

Court of Appeals of Oklahoma, Division No. 4.

June 27, 1995.

Shawn B. Daniels, J.H.B. Wilson, Mordy, Sperry & Daniels, Ardmore, for appellee.

John B. Hayes, Looney, Nichols, Johnson & Hayes, Oklahoma City, for appellant.

## OPINION

STUBBLEFIELD, Judge.

Oklahoma Health Care Corporation d/b/a Memorial Hospital of Southern Oklahoma (Hospital) entered into a contract with JHBR–Jones–Hester–Bates–Riek, Inc., (JHBR) for architectural work in conjunction with a project for renovation and addition to a medical facility. The ten page document, executed on March 21, 1989, was a standard form but certain provisions had been deleted and specific terms of the contract added by the parties. The contract included a provision specifying binding arbitration of disputes.

Approximately three years later, Hospital commenced this action seeking damages from JHBR based upon JHBR's purported failure "to provide proper and adequate architectural services." Hospital attempted to plead around the arbitration provision by asserting that any acts of JHBR's that would fall within the "purview of the arbitration provision of the contract" were intermixed with claims of negligence, and, therefore, the trial court would have "inherent power" to hear the dispute. Though Hospital sought to enforce much of the contract, it asserted that the arbitration provision was the result of unequal bargaining power and resulted in a "contract of adhesion" and was voidable by the trial court.

JHBR filed a special appearance seeking, among other things, an order directing arbitration. It sought dismissal of the action because of the mandatory arbitration clause in the parties' contract. However, in its response, Hospital asserted that its action was not based on contract but on "tort theories of professional negligence/malpractice" not contemplated by the contract. It also asserted that the arbitration clause was unenforceable because of two provisions of Oklahoma law: (1) Title 15 O.S.1991 § 216, which provides: "Every stipulation or condition in a contract, by which any party thereto

is restricted from enforcing his rights under the contract by the usual legal proceedings in the ordinary tribunals ... is void;" and, (2) Okla.Const. art. 23, § 8, which states: "Any provision of a contract, express or implied, made by any person, by which any of the benefits of this Constitution is sought to be waived, shall be null and void."

■ The issue was submitted on briefs, with evidentiary materials attached. The trial court overruled JHBR's motion based on the following findings: (1) The architectural services to be performed by JHBR pursuant to the contract did not constitute a transaction involving commerce among the states as contemplated by the Federal Arbitration Act; (2) The arbitration provision of the contract was void as being violative of the Oklahoma Constitution; (3) The lower court had jurisdiction; and, (4) Venue was proper to adjudicate the dispute. JHBR appeals.[1]

JHBR proposes that the Oklahoma Uniform Arbitration Act, 15 O.S.1991 §§ 801–818, is not unconstitutional.[2] However, it is not necessary that we address this issue because we find that JHBR's other proposition of error is dispositive—that even if the contractual arbitration provision violates the state constitution, or if the Oklahoma Uniform Arbitration Act is unconstitutional, the Federal Arbitration Act, 9 U.S.C. §§ 1–307 (1994), still applies to the contract and dictates that this dispute be submitted to binding arbitration.

■ Specifically, JHBR asserts that the trial court erred in finding the Federal Arbitration Act (FAA), inapplicable because the contract did not involve commerce. We first address Hospital's response to this argument that, because it had based its action on tort and not on breach of contract, the action was not within the scope of the FAA.

Hospital cites *Wolverine Exploration Co. v. Natural Gas Pipeline Co. of America*, 842 P.2d 352 (Okla.Ct.App.1991), for the proposition that tort claims are not arbitrable.

---

1. An order denying a motion to compel arbitration is appealable by right. Civil Appellate Procedure Rule 1.60, 12 O.S.1991, ch. 15, App. 2; 15 O.S.1991 § 817(A)(1); *Freeman v. Prudential Sec., Inc.*, 856 P.2d 592 (Okla.Ct.App.1993).

2. The constitutionality of the Uniform Arbitration Act as it relates to future disputes is currently before the supreme court in *Rollins v. Thermodyne Industries, Inc.*, No. 82,774, certiorari to Court of Appeals (Sept. 12, 1994).

However, the *Wolverine* court held that a specific tort claim was not arbitrable but, based on the contract between the parties, other elements of the dispute *were* arbitrable. Here, the contract for architectural services was rather broad in its delineation of arbitrable matters—"[c]laims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof...." One aspect of the contract stated: "The Architect's services shall be performed as expeditiously as is consistent with professional skill and care and the orderly progress of the Work." Thus, the professionalism of JHBR's work is a dispute within the framework of the agreement.

■ We also find that Hospital's petition, though it attempts to frame the dispute as a tort, actually states a cause of action grounded in contract. Hospital alleged:

9. As a direct and proximate result of JHBR's negligence ... the project ... was constructed in such a way that it *violates the terms of the contract, the plans and specifications of the project, is unfit for its intended use, and has and will require corrective work and reconstruction at substantial cost to [Hospital].*

10. As a direct and proximate result of [JHBR's] breach of the contract ... and the attendant duties, obligations and terms thereunder, the project at [Hospital] was constructed in such a way that it *violates the terms of the contract, the plans and specifications of the project, is unfit for its intended use, and has and will require corrective work and reconstruction at substantial cost to [Hospital].* (Emphasis added.)

Clearly, breach of contract is the cornerstone of Hospital's action, and arbitration of that dispute is appropriate. Therefore, we will turn our review to the trial court's ruling that the FAA was not applicable.

■ Title 9 U.S.C. § 2, provides:

A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or refusal to perform the whole or any part thereof ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract.

It is not disputed that "Article 7" of the architectural services contract provided for binding arbitration. Thus, if the agreement herein evidences a transaction involving commerce, the FAA and accompanying federal law control, and the central provisions of the federal law must be applied by state courts. *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984).

■ Because the issue of whether a transaction is one that involves interstate commerce is a question of fact, *see Merritt–Chapman & Scott Corp. v. Pennsylvania Turnpike Commission,* 387 F.2d 768, 772 (3d Cir.1967), the trial court's ruling on that question must be affirmed by this court unless it is clearly against the weight of evidence or contrary to law. *Murdock v. Loeffelholz,* 421 P.2d 236 (Okla.1966).

The Court in *Allied–Bruce Terminix Companies, Inc. v. Dobson,* —— U.S. ——, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), reviewed a case in which the Alabama Supreme Court upheld a denial of arbitration based on a finding that the state statute, Ala.Code § 8–1–41(3) (1993), made written, pre-dispute arbitration agreements invalid and unenforceable. In its response to Allied–Bruce Terminix's appeal, the State of Alabama had been supported by attorneys general from twenty states in seeking to have the holding of *Southland* overruled, and "thereby to permit Alabama to apply its antiarbitration statute in this case irrespective of the proper interpretation of § 2." *Id.* at ——–——, 115 S.Ct. at 838–39. The Court granted certiorari in *Allied–Bruce Terminix* to resolve the conflict between state courts and federal courts. *Id.* at ——, 115 S.Ct. at 837.

The Court gave a historical perspective of the issue and identified state courts' refusal to enforce agreements to arbitrate as forming the impetus for enactment of the FAA. *Id.* at ——, 115 S.Ct. at 838. The Court found that Congress "intended courts to 'enforce [arbitration] agreements into which parties had entered.'" *Id.* (quoting *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213,

220, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985)).

The *Allied–Bruce Terminix* Court examined the section 2 provision of the FAA regarding "contract evidencing a transaction involving commerce." —— U.S. at ——, 115 S.Ct. at 839. Thus, it contemplated the meaning of commerce as it relates to the FAA. It specifically rejected the view of the Alabama Supreme Court and several other courts that the determination of sufficient interstate commerce to invoke application of the FAA did not involve consideration of what was required in performance of the contract but what the parties had contemplated at the time of contracting.

The *Allied–Bruce Terminix* Court held that in order to extend the FAA's reach to the limits of Congress' Commerce Clause power, the "contract *evidencing* a transaction" and "*involving* commerce" language of section 2 should be read broadly. (Emphasis added.) It determined that "involving commerce" as used in section 2 is the "functional equivalent of 'affecting,' " which normally denotes that Congress intended to exercise commerce power to the full, *id.* at ——, 115 S.Ct. at 841 (citing *Russell v. United States*, 471 U.S. 858, 859, 105 S.Ct. 2455, 2456, 85 L.Ed.2d 829 (1985)), or a full exercise of constitutional power. —— U.S. at ——, 115 S.Ct. at 841; *Bernhardt v. Polygraphic Co. of America*, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956).

Therefore, we must review the evidence elicited to ascertain whether the transaction, in fact, affected interstate commerce. As to what constitutes the "transaction," we again have a dispute. Hospital asserts on appeal that most of JHBR's evidence relates to the "construction contract" with the prime contractor. Indeed, Hospital does not dispute that the construction contract affected interstate commerce. However, it maintains that the interstate commerce involved in the construction contract did not extend to its contract with JHBR. Although there is nothing filed of record to indicate that the trial court was presented with this theory, we have examined the contracts involved and the construction project to determine this issue.

■ We do not deem it necessary to intricately delineate the provisions of the architectural services contract but note that it involves JHBR in nearly every phase of the construction project, from planning to final approval of the construction. The architectural services contract is completely interrelated to the actual construction of the project. Thus, we conclude that we must examine the architectural services contract as well as the actual execution and completion of the construction project to determine whether interstate commerce was involved.

Many courts have held that contracts to design and construct a project within a state between parties domiciled in the state may involve commerce and, thus, fall within the scope of the FAA when construction materials, other contractors or workers on the project came from out of state. *See Del E. Webb Constr. v. Richardson Hosp. Auth.*, 823 F.2d 145, 147 (5th Cir.1987) (contract involved personnel from different states; employees of the plaintiff traveled interstate; the interstate mails were used to facilitate the work of the plaintiff's subcontractors; and, materials used in the construction of the defendant's facilities were manufactured and moved in interstate commerce); *United States v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1426 (9th Cir.1985) (raw materials supplied from out-of-state sources); *R.J. Palmer Constr. Co. v. Wichita Band Instrument Co.*, 7 Kan.App.2d 363, 642 P.2d 127, 130 (1982) (use of California redwood siding in the construction of a building shipped through interstate commerce to Kansas); *Episcopal Housing Corp. v. Federal Ins. Co.*, 269 S.C. 631, 239 S.E.2d 647 (1977) (apparent from construction contracts that materials from outside the state would be used in construction).

JHBR demonstrated that, *in entering its contract with Hospital,* it was anticipated that there would be "substantial interstate commerce." By affidavit, JHBR's president attested to the fact that JHBR, as part of the duties of its specific contract, had "conferred with manufacturers, consultants and others outside Oklahoma to secure the information needed to prepare the construction contract plans and specifications" and that Hospital

had "engaged out of state firms with [which] JHBR was required to confer and coordinate." JHBR delineated several non-Oklahoma entities with which Hospital required consultation and literally dozens of non-Oklahoma suppliers and manufacturers with which it had contact.

JHBR also produced considerable evidence that non-Oklahoma subcontractors worked on the project. An officer of the prime contractor attested by affidavit to the fact that it was anticipated that "one or more of its subcontractors and suppliers would be from states other than Oklahoma." He specifically described one Texas subcontractor which brought Texas employees to Oklahoma to work on the project.

JHBR also demonstrated that much of the materials used in the construction were manufactured in other states and shipped to Oklahoma. JHBR's president delineated such materials and attached invoices reflecting the purchases. The prime contractor affirmed this contention by its officer's affidavit, as did a subcontractor.

JHBR's president also attested to the fact that the prime contractor bids—which JHBR was contractually bound to assist Hospital in obtaining and negotiating—were solicited through advertisements placed with M.F. Dodge Reports, including its office in Dallas, and that an unsuccessful bidder, Spaw–Glass of Irving, Texas, had made interstate telephonic inquiry about plans and specifications. The contractor bonds for the successful bidder were executed by St. Paul Mercury Insurance Company of St. Paul, Minnesota.

Based on the foregoing, we find that clearly there was interstate commerce involved in the performance of the architectural services contract and in the interrelated construction project. Accordingly, the trial court's determination that the FAA is not applicable because the contract did not involve commerce is against the clear weight of the evidence and contrary to law. In view of our ruling on this issue, we need not address JHBR's remaining propositions of error.

Because Hospital, in its response to the motion to compel arbitration, abandoned its "contract of adhesion" argument, it did not raise any grounds "as exist at law or in equity for revocation" of the contract. 9 U.S.C. § 2. Therefore, JHBR is entitled to an order directing arbitration.

The lower court's judgment is reversed and the cause remanded with instructions to enter an order directing the parties to submit the controversy to arbitration.

REVERSED AND REMANDED WITH INSTRUCTIONS.

GOODMAN, P.J., and REIF, J. (sitting by designation), concur.