2011 OK CIV APP 30

**B.A.P., L.L.P., an Oklahoma Limited Liability Partnership, Plaintiff/Appellee,**

v.

**Michael H. PEARMAN, M.D. and Anesthesiologists of Bartlesville, P.C., an Oklahoma Professional Corporation, Defendants/Appellants.**

**No. 107,747.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Jan. 25, 2011.

Bruce W. Robinett, Rick D. Tucker, Brewer, Worten, Robinett, Bartlesville, OK, for Plaintiff/Appellee.

John R. Woodard, III, Paula J. Quillin, Feldman, Franden, Woodard & Farris, Tulsa, OK, for Defendants/Appellants.

JOHN F. FISCHER, Presiding Judge.

¶1 Plaintiff, B.A.P., L.L.P. (BAP), filed this suit against Defendants Anesthesiologists of Bartlesville, P.C. (AOB), and Michael H. Pearman, M.D. Defendants responded with a motion to compel arbitration, seeking to enforce an arbitration clause contained in the BAP Partnership Agreement. Defen-

dants appeal the district court's order denying their motion. We reverse and remand this case with directions to conduct an evidentiary hearing on defendants' motion.

## BACKGROUND

¶2 BAP is a limited liability partnership composed of five partners, including Michael H. Pearman, M.D., P.L.C., a professional entity owned by Dr. Pearman. Dr. Pearman is also the president and sole stockholder of AOB. AOB is a signatory to the BAP Partnership Agreement, and is designated as the manager of BAP in that Agreement. Dr. Pearman signed the Partnership Agreement on behalf of AOB and is designated as the agent and representative of BAP.

¶3 BAP sued AOB and Dr. Pearman in his individual capacity, seeking monetary damages, exemplary damages, injunctive and declaratory relief, reformation of contract, an accounting, a constructive or resulting trust, unjust enrichment, and disgorgement. The complaints center on allegations of fraud and abuse of confidence by Dr. Pearman and AOB to acquire funds owned by BAP. This appeal concerns BAP's obligation to arbitrate these claims.

## STANDARD OF REVIEW

¶4 In "proceedings governing applications to compel arbitration, the existence of an agreement to arbitrate is a question of law. Questions of law are reviewed *de novo.*" *Rogers v. Dell Computer Corp.*, 2005 OK 51, ¶18, 138 P.3d 826, 831 (citing *Hill v. Blevins*, 2005 OK 11, ¶3, 109 P.3d 332, 334; *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir.2005)). "We review an order granting or denying a motion to compel arbitration *de novo*, the same standard of review employed by the trial court." *Thompson v. Bar–S Foods Co.*, 2007 OK 75, ¶9, 174 P.3d 567, 572 (citing *Fleming Cos., Inc. v. Tru Discount Foods*, 1999 OK CIV APP 18, ¶11, 977 P.2d 367, 370; *Towe, Hester & Erwin, Inc. v. Kansas City Fire & Marine Ins. Co.*, 1997 OK CIV APP 58, ¶4,

947 P.2d 594, 596). "Arbitration should be compelled unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id. See Fleming Cos., Inc.*, ¶16, 977 P.2d at 370–371.

## ANALYSIS

¶5 The arbitration clause in the Partnership Agreement provides that any dispute among the parties to the Agreement that is not resolved by mediation "shall be submitted to binding arbitration. . . ." BAP argues that neither AOB nor Dr. Pearman can enforce the arbitration clause because that clause was only intended to apply to disputes among the partners to the BAP Partnership Agreement. As BAP construes the Agreement, the "partners" in the Agreement are the five professional entities that constitute BAP. Therefore, BAP concludes that AOB is not a "partner" in the Agreement but a signatory to the Agreement only in its capacity as designated manager, and the arbitration clause was not intended to apply to disputes between partners and a manager. Likewise, BAP contends that Dr. Pearman cannot enforce the arbitration clause because he is not a party to the Agreement in his individual capacity.[1] The initial issue in this appeal, therefore, requires construction of the arbitration clause to determine whether AOB and/or Dr. Pearman may compel arbitration of this dispute.

### I. The Arbitration Clause

¶6 The district court found in favor of BAP and denied defendants' motion to compel arbitration. On appeal, defendants raise five issues, three of which we find dispositive:

1. Whether it was error to deny defendants' motion to compel arbitration based on the conclusion that the parties intended the arbitration clause to apply only to disputes among partners, and not disputes between partners and managers, and

---

1. Additionally, BAP claims that even if AOB and Dr. Pearman had standing to enforce the arbitration clause, they waived the right to do so by failing to comply with the mediation procedures provided for in the Partnership Agreement before seeking to compel arbitration. We address this issue in part II.

therefore AOB lacked standing to compel arbitration.

2. Whether it was error to conclude that Dr. Pearman lacked standing to enforce the clause because he was not party to the Agreement in his individual capacity.

3. Whether it was error to deny defendants' motion based on the finding that compliance with the mediation procedures provided in the Agreement was a condition precedent to compelling arbitration, and therefore defendants waived any right to compel arbitration by engaging in mediation using a different procedure.

¶ 7 "Courts generally favor arbitration ... because [it] provide[s] substantial justice by an immediate and speedy resolution with a minimum of court interference." *Voss v. City of Oklahoma City*, 1980 OK 148, ¶ 6, 618 P.2d 925, 928. The role of the court is to determine whether there is a valid binding arbitration clause, and if so, whether "the arbitration clause is broad enough to include the alleged dispute...." *Id.* If the court answers both these questions in the affirmative, "arbitration must be ordered." *Id.* The question of whether parties have an agreement to submit a dispute to arbitration is a question of law to be decided applying state contract law. *Rogers v. Dell Computer Corp.*, 2005 OK 51, ¶ 19, 138 P.3d 826, 831 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–44, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)).[2]

### A. AOB's Standing to Enforce the Arbitration Clause

¶ 8 It is undisputed that AOB is a signatory to the BAP Partnership Agreement and is designated as the manager in the Agreement. The Agreement confers rights and obligations on AOB, including responsibility for "[a]ll decisions with respect to any matter set forth [in the Agreement] affecting or arising from the conduct of the business of the Partnership...." Nonetheless, BAP claims that the dispute resolution procedure provided in the Agreement was not intended to apply to disputes between managers and partners. It bases this argument on the fact that the arbitration clause provides that the initial step in the dispute resolution process is to submit the dispute to the manager. BAP concludes that because it would not make sense to submit a dispute involving a manager to the manager, the dispute resolution procedures in the Agreement were not intended to apply to the manager. The district court found this argument dispositive of the parties' intent. Although this language invokes some ambiguity, we find that pursuant to Oklahoma contract law the dispute resolution process provided in the Agreement reflects that the parties intended it to apply to partners and managers, and that for that purpose, AOB is a "party" to the Agreement.

¶ 9 When there is a written agreement, "[t]he whole of the contract is to be taken together" and "the intention of the parties is to be ascertained from the writing alone, if possible...." *Oklahoma Southern Life Ins. Co. v. Mantz*, 1942 OK 392, ¶¶ 11–12, 131 P.2d 70, 72 (citing 15 O.S.2001 §§ 155, 157). "The courts will read the provisions of a contract in their entirety to give effect to the intention of the parties as ascertained from the four corners of the contract, and where the language is ambiguous, it will be interpreted in a fair and reasonable sense." *Oklahoma Oncology & Hematology, P.C. v. U.S. Oncology, Inc.*, 2007 OK 12, ¶ 27, 160 P.3d 936, 946. "The intention of the parties must be deduced from the entire agreement, and every provision must be con-

---

2. The parties appear to be in agreement that this dispute is governed by Oklahoma arbitration law. Pursuant to both federal and Oklahoma law, "arbitration agreements are valid, enforceable and irrevocable except upon grounds which exist at law or in equity for the revocation of any contract." *Towe, Hester & Erwin, Inc. v. Kansas City Fire & Marine Ins. Co.*, 1997 OK CIV APP 58, ¶ 7, 947 P.2d 594, 596. We find no distinction between federal and Oklahoma law that prevents application of both to this case, other than the distinction noted in this Opinion between federal and Oklahoma law on the issue of fraud in the inducement. *See Shaffer v. Jeffery*, 1996 OK 47, ¶¶ 24, 26, 915 P.2d 910, 916–17 (declining to follow the doctrine of separability, finding instead that Oklahoma arbitration law requires a court to resolve allegations of fraud in the inducement in formation of both the arbitration clause and the contract itself, before determining whether a valid and binding arbitration agreement exists).

strued so as to be consistent with each other and that construction adopted which, if possible, gives effect to every part of the contract." *Sullivan v. Gray,* 1938 OK 183, ¶ 7, 78 P.2d 688, 690. *See* 15 O.S.2001 § 157. The contract language is to be read "in its plain and ordinary meaning" and the court will determine, "as a matter of law, whether a contract provision is ambiguous and interpret the contract provision as a matter of law, where the ambiguity can be cleared by reference to other provisions or where the ambiguity arises from the contract language and not from extrinsic facts." *Oklahoma Oncology & Hematology, P.C.,* ¶ 27, 160 P.3d at 946.

¶ 10 The dispute resolution procedure in the Agreement provides for resolution of disputes between "parties" to the Agreement. "Parties" is not a defined term in the Agreement. However, in other provisions of the Agreement "partners" and "manager" are specifically referenced. The term "parties" appears only in the dispute resolution section of the Agreement.

¶ 11 BAP's construction of the term "parties" would require us to substitute "partners" for "parties" where the latter term appears in the dispute resolution provision. The drafters of the Agreement were in a better position to do so than this Court. "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." 15 O.S.2001 § 154. Elsewhere in the Agreement, except in the non-compete section, the Agreement consistently uses the terms "partners" and "manager." Consequently, the most consistent interpretation of this language leads to the conclusion that "parties" in the dispute resolution section was intended to refer to both "partners" and the "manager."

¶ 12 Further, this interpretation is consistent with the normal meaning of the word "parties." "The words of a contract are to be understood in their ordinary and popular sense. . . ." 15 O.S.2001 § 160. It is undisputed that AOB is a signatory to the Agreement and that the Agreement establishes the rights and obligations of the manager. It would be inconsistent to conclude that AOB can enforce those rights but that it is not a party to the Agreement. Unless clearly contrary to the intention of the parties, a contract is to be construed so that it is capable of being carried into effect. 15 O.S.2001 § 159. Finally, if the parties in fact did not intend the dispute resolution procedure to apply to the manager, they could have easily made this clear by using the term "partners" rather than "parties." See 15 O.S.2001 § 155. Therefore, we find that as a party to the BAP Partnership Agreement, AOB is entitled to enforce the dispute resolution procedures in the Agreement and compel arbitration of this dispute.

### B. Dr. Pearman's Standing to Enforce the Arbitration Clause

¶ 13 Based on these same principles of contract construction, it is clear that Dr. Pearman is not a party to the Partnership Agreement. However, it is also undisputed that Dr. Pearman signed the Partnership Agreement as the manager of AOB, and as the agent of his professional entity, one of the five BAP partners. Dr. Pearman is also designated as BAP's agent in the Agreement. Dr. Pearman argues that he is entitled to enforce the arbitration clause based on either principles of agency or estoppel. Many courts have permitted a nonsignatory to enforce an arbitration clause when the dispute arises out of or relates to the agreement containing the arbitration clause.[3]

---

**3.** *See Westmoreland v. Sadoux,* 299 F.3d 462, 466–67 (5th Cir.2002) (agreeing with the First and Ninth Circuits that although "a nonsignatory cannot compel arbitration merely because he is an agent of one of the signatories," the key question is whether the wrongdoing arose from a provision or interpretation of the contract containing the arbitration clause, and that a nonsignatory may compel arbitration in two circumstances: "when the signatory to a written agreement containing the arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory," and "when the signatory to the contract containing a arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract"); *Long v. Silver,* 248 F.3d 309 (4th Cir.2001) (allowing a nonsignatory to compel arbitration when the plaintiff had invoked other provisions of the arbitral agreement); *Thomson–CSF, S.A. v. Ameri-*

¶ 14 In *Long v. DeGeer,* 1987 OK 104, 753 P.2d 1327, the defendant moved to compel arbitration based on a clause contained in an agreement to which he was not a party but had signed in his capacity as agent for his principal. The case involved a dispute over the creation and handling of a securities account. The Oklahoma Supreme Court, applying New York state law, found that despite the lack of a contractual relationship between the parties to the dispute, "the nonsignatory agent handling matters within the scope of the arbitration agreement" was entitled "to bring questions concerning those matters into arbitration under the agreement...." *Id.* ¶ 7, 753 P.2d at 1329. The Court relied on the fact "that the basis for the action against appellant was the existence of the ... agreement" and the defendant's actions in carrying out the business that was the subject matter of the agreement. *Id.* ¶ 6, 753 P.2d at 1328. Because "[t]he arbitration agreement ... provided for arbitration of disputes arising out of or relating to" the subject of the agreement and transactions concerning the agreement, the Court found that the dispute "clearly lies within the ambit of the arbitration provision." *Id.* ¶ 7, 753 P.2d at 1329. The Court held that the parties' relationship was "governed by ordinary contract and agency principles," and noted that the defendant had at all times acted as the agent of the principal/signatory in the actions that were the subject of the complaint, and the plaintiff was aware of this

agency. *Id.* ¶ 8. Because the defendant's "actions alleged to be wrongful clearly arose out of the existence of the relationship created by the ... agreement, the dispute regarding those actions is within the scope of the agreement to arbitrate." *Id.*

¶ 15 Although we recognize that our decision is not controlled by *Long* because that case was resolved pursuant to New York state law, we find no distinction in Oklahoma agency or arbitration law that prevents us from adopting the *Long* analysis in this case. The relevant facts in *Long* and the facts in this case are essentially identical. The parties agree that Dr. Pearman acted as the agent of AOB when he signed the Partnership Agreement containing the arbitration clause. The actions BAP complains of arose out of Dr. Pearman's performance of his duties as the manager and agent of AOB, just as the actions complained of in *Long* arose out of the nonsignatory agent's performance of his duties in relation to the agreement containing the arbitration clause. BAP cannot sue AOB by and through Dr. Pearman, and sue Dr. Pearman in his individual capacity, for actions arising out of duties conferred by the Partnership Agreement to which AOB is a party, and at the same time claim that Dr. Pearman is not entitled to compel arbitration pursuant to the Agreement. Clearly AOB "could take no actions ... except through its employees." *See id.* ¶ 9. Dr. Pearman is the sole stockholder and manager of AOB, and pursuant to

can Arbitration Ass'n, 64 F.3d 773, 779 (2d Cir. 1995) (recognizing that federal courts "have been willing to estop a *signatory* from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed"); *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,* 10 F.3d 753, 758 (11th Cir.1993) (finding plaintiff to be "equitably estopped from avoiding arbitration of its claims" that were "intimately founded in and intertwined with the" agreement containing the arbitration clause); *Britton v. Co-op Banking Group,* 4 F.3d 742, 745 (9th Cir.1993) (finding that contract and agency law principles may bind nonsignatories to an arbitration agreement); *Roby v. Corp. of Lloyd's,* 996 F.2d 1353, 1360 (2d Cir.1993) (finding that a nonsignatory of a disclosed agent may compel arbitration if the principal had standing to compel arbitration); *Lee v. Chica,* 983 F.2d 883, 887 (8th Cir. 1993) (allowing a nonsignatory disclosed agent

to compel arbitration based on the principal's authority to do so); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 7 F.3d 1110 (3d Cir.1993) (following the reasoning of the Sixth and Ninth Circuits allowing a nonsignatory to compel arbitration); *Arnold v. Arnold Corp.,* 920 F.2d 1269, 1281–82 (6th Cir.1990) (deciding to "follow the well-settled principle affording agents the benefits of arbitration agreements made by their principal"); *McBro Planning & Development Co. v. Triangle Elec. Constr. Co., Inc.,* 741 F.2d 342, 344 (11th Cir.1984) (nonsignatory entitled to compel arbitration of claims "intimately founded in and intertwined with the underlying contract obligations"); *Hughes Masonry Co., Inc. v. Greater Clark County School Bldg. Corp.,* 659 F.2d 836, 838–39 (7th Cir.1981) (estopping a signatory from avoiding arbitration with a nonsignatory because the basis of the claims against the nonsignatory were breach of "the duties and responsibilities assigned and ascribed to [it] by the agreement").

the analysis in *Long* he is entitled to compel arbitration pursuant to the Partnership Agreement.

¶ 16 Oklahoma also recognizes the line of federal cases reaching the same result as *Long*. In *Carter v. Schuster*, the Oklahoma Supreme Court recognized that "the Second Circuit has identified five theories for binding nonsignatories to arbitration agreements," including the "agency" theory, whereby "traditional principles of agency law may bind a nonsignatory to an arbitration agreement," and the defense of "estoppel, when the claims are integrally related to the contract containing the arbitration clause." 2009 OK 94, ¶ 14, 227 P.3d 149, 153 (citing *Thomson–CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 776–79 (2d Cir.1995)). In *Carter* the Court rejected the agency argument, but the facts in that case are distinguishable from the facts at hand. In *Carter*, a signatory to the contract sought to bind a nonsignatory agent of a principal who had signed the agreement. The Court noted that based on agency principles an agent who signs on behalf of a disclosed principal does not bind himself "in his individual capacity," and therefore absent any fraudulent action on behalf of the agent, the agent could not be bound by the arbitration clause in his individual capacity. *Id.* ¶¶ 18–20, 227 P.3d at 154–55. The Court pointed out the distinction between the facts in *Carter*, in which a signatory was attempting to compel a nonsignatory to arbitrate, and the federal cases in which the nonsignatory agreed to arbitrate, and the signatory was "merely being held to his previous agreement to arbitrate." *Id.* ¶¶ 22, 25, 227 P.3d at 155–56.

¶ 17 BAP contends that *Oklahoma Oncology & Hematology, P.C. v. U.S. Oncology, Inc.*, 2007 OK 12, 160 P.3d 936, is controlling in this case. We find the facts in that case distinguishable from the case before us. *Oklahoma Oncology* involved a suit against a parent and a subsidiary corporation. The plaintiff in that case had executed an arbitration agreement with the subsidiary corporation, but not the parent corporation, and the parent corporation had not taken control of the subsidiary until after execution of the agreement containing the arbitration clause. Therefore, the Court found the parent corporation could not compel arbitration, as it was "a stranger to the contract," and "neither enjoys the contract benefits nor carries the contract obligations." *Id.* ¶ 25, 160 P.3d at 945–46.[4] This differs from the facts in this case, in which Dr. Pearman was known by BAP as the agent, manager, and sole stockholder of AOB, who could take no action to perform its ongoing obligations under the contract except through Dr. Pearman. Additionally, the Court in *Oklahoma Oncology* found that the arbitration provision at issue did "not deal with disputes as to the meaning of the contract terms" or "with the application or performance of the contract to which the parties have agreed." *Id.* ¶ 28, 160 P.3d at 946–47. The Court also found that the plaintiff's claims against the parent corporation only related indirectly to the agreement containing the arbitration clause. *See id.* ¶ 32, 160 P.3d at 948. BAP's claims against Dr. Pearman, and against AOB by and through Dr. Pearman are based on his alleged breach of fiduciary duties owed under the Partnership Agreement. Section 8.3.1.1 of the arbitration provision at issue in this case provides for mandatory arbitration of "[a]ny dispute arising among parties hereto regarding any term, covenant, or condition of this Agreement." The facts of this case are sufficiently distinguished from those in *Oklahoma Oncology* that we find its analysis does not require denial of arbitration in this case.

¶ 18 Further, given the scarcity of authority on the issue in Oklahoma law, and the similarities between federal and Oklahoma

---

4. The Court noted that although "the principles of agency law or the doctrine of piercing the corporate veil" may allow a court to "disregard corporate distinctions and treat two separate legal entities as one," the appellate record contained no evidence "showing the nature of the relationship between" the parent and subsidiary in this case. *Oklahoma Oncology & Hematology, P.C.*, ¶ 24 n. 18, 160 P.3d at 945 n. 18. Therefore the Court declined to "ignore their separate and distinct corporate identities...." *Id.* ¶ 24, 160 P.3d at 945. This case does not involve two separate corporate entities, but rather, a corporate entity that is a signatory to the Partnership Agreement, and the agent of that entity who is being sued for violations of his duties in relation to his control of the corporate signatory under the Partnership Agreement.

arbitration law as it relates to this issue,[5] we find opinions from the federal circuit courts on this issue are also instructive.[6] The federal circuit courts generally follow the analysis in *Long*.[7] The First Circuit has rejected the agency theory in certain circumstances. *See McCarthy v. Azure*, 22 F.3d 351 (1st Cir.1994). However, the court's reasoning in that case demonstrates that it is not in conflict with opinions from the other circuits. In *McCarthy* the court declined to follow the other circuits because the case involved a purchase agreement, rather than a service contract. *See id.* at 356–57. This distinction is important because "[a] person who enters into a service contract with a firm contemplates an ongoing relationship in which the firm's promises can only be fulfilled by future (unspecified) acts of its employees or agents stretching well into an uncertain future," whereas "[a] person who contracts to transfer assets to a company faces ... a one-shot transaction in which the purchaser's obligations are specified and ... essentially, performed in full at the closing, or soon thereafter." *Id.* at 357. The court found that "because the Purchase Agreement cannot easily be construed to refer to the operations of, or services rendered by [the principal], that company's employees cannot plausibly be included by implication within the ambit of either the agreement or its arbitration clause." *Id.* at 357–58. This reasoning demonstrates why arbitration with Dr. Pearman is appropriate in this case. The Partnership Agreement at issue is similar to a service contract, pursuant to which AOB was to perform unspecified acts in the future as manager of BAP, acts which could only be carried out by employees of AOB. It was understood that Dr. Pearman, as the manager and sole stockholder of AOB, would be largely responsible for performance of AOB's obligations under the Agreement. Therefore we find the reasoning of *Long* and the majority of the federal circuit courts applicable to this case.

¶ 19 We find no distinction under Oklahoma agency or arbitration law that is contrary to this reasoning. As a question of first impression in Oklahoma, we look to federal law in resolving this issue. *See Carter*, 2009 OK 94, ¶¶ 14, 25, 227 P.3d at 153, 156 (recognizing the federal circuit decisions adopting the rule that a nonsignatory may compel arbitration with a signatory as "a matter of contract," when "the nonsignatory is agreeing to arbitrate"). We find it was error for the district court to conclude that because Dr. Pearman was not a signatory to the Agreement in his individual capacity that he cannot compel arbitration of claims arising out of and relating to his duties under the Agreement.

## II. Waiver of the Right to Arbitrate

¶ 20 BAP claims that even if the defendants can enforce the dispute resolution procedures in the Agreement, they waived the right to compel arbitration by failing to comply with the mediation procedure. Waiver of a " 'contractual right to compel arbitration' ... 'is not easily inferred' and '[t]he party asserting waiver has the burden of proof regarding that issue.' " *Willco Enterprises, L.L.C. v. Woodruff*, 2010 OK CIV APP 18, ¶ 15, 231 P.3d 767, 772 (quoting *Northland Ins. Co. v. Kellogg*, 1995 OK CIV APP 84, ¶ 7, 897 P.2d 1161, 1162 (alteration in original)). "Courts 'should ... resolve[ ] in favor of coverage' any doubts concerning the arbitrability of a particular dispute." *Id.* ¶ 14 (quoting *City of Muskogee v. Martin*, 1990 OK 70, ¶ 8, 796 P.2d 337, 340 (alteration in original)). Here, the district court's determination that the defendants had waived the right to arbitrate was based on its construction of the Partnership Agreement. Therefore we review the district court's finding of waiver *de novo*. As stated in *Northland Ins. Co.*, ¶ 5, 897 P.2d at 1162, "whether the trial court applied the correct legal standards is a *de novo* review."

¶ 21 The Partnership Agreement provides:

8.3.1.1. Any dispute arising among the parties hereto regarding any term, covenant or condition of this Agreement shall be resolved to the extent possible by the

---

**5.** *See* footnote 2, *supra.*

**6.** *See* footnote 3, *supra.*

**7.** *See* footnote 3, *supra.*

Manager or Management Committee.... If both parties accept the resolution of the Manager or Management Committee, the parties shall implement the resolution without further action.

8.3.1.2. If the parties do not accept the resolution of the Manager or Management Committee within a reasonable time, either party may submit the dispute to mediation using the Rules of Procedure for Christian Conciliation of the Institute for Christian Conciliation, a division of Peacemaker Ministries.

8.3.1.3. If the mediation process fails to resolve the dispute, the dispute shall be submitted by either party to binding arbitration as provided for in Article 8.3.2 of this Agreement.

BAP claims that the following procedures were not followed: "action taken by a Christian Conciliation administrator, the signing of a 'conciliation agreement', introduction and opening prayer, closing comments and prayer." Even though BAP consistently maintained that defendants were not entitled to utilize the dispute resolution process provided in the Agreement, it did agree to mediate its dispute with AOB and Pearman. Defendants initiated the mediation process by selecting Dispute Resolution Consultants, Inc., as mediator. BAP participated in the mediation and did not object or request that the rules of procedure for the Christian Conciliation be followed until after defendants moved to compel arbitration. Although BAP contends that the defendants waived the right to arbitrate by failing to follow the exact dispute resolution procedures set out in the Agreement, not only did BAP voluntarily participate in the substituted procedure, but also it does not point to any aspect of the mediation procedure that was followed that had an adverse impact on the effectiveness of the mediation. BAP fails to demonstrate that the mediation procedure actually followed was, in the first instance, deficient, or, in the second that it departed in any meaningful way from the dispute resolution procedures provided in the Agreement. Finally,

BAP's concern for strict compliance with the procedures specified in the Agreement should have been raised before the mediation was conducted.[8]

▌ ¶ 22 Although we agree that the dispute resolution provision should be interpreted as requiring a good faith effort to mediate before invoking the arbitration provision, we do not find that the failure to comply with the specific mediation procedures in the Agreement constituted a waiver of defendants' right to compel arbitration in this case. It does not follow that the Christian Conciliation procedure set out in the Agreement was irrevocably established as the only procedure available for mediation. That construction is inconsistent with the provision in section 1, defining "Agreement" as, "this Agreement, as amended from time to time." Further, *Osprey L.L.C. v. Kelly–Moore Paint Co.*, 1999 OK 50, 984 P.2d 194, supports our interpretation. In *Osprey*, notice sent by facsimile was found sufficient to extend a lease term despite the requirement in the written lease that notice be delivered personally or sent by mail. The Oklahoma Supreme Court recognized that:

> [C]ourts generally recognize that, despite the contention that there must be strict compliance with the notice terms of a lease option agreement, use of an alternative method does not render the notice defective if the substituted method performed the same function or served the same purpose as the authorized method.

*Id.* ¶ 12, 984 P.2d at 197–98. Applying the usual rules for interpreting contracts, the Court found the lease terms to be unambiguous, because the lease "clearly requires that notice 'shall' be in writing. The provision for delivery, either personally or by ... mail, uses the permissive 'may' and it does not bar other modes of transmission which are just as effective." *Id.* ¶ 14, 984 P.2d at 199. Therefore any "substituted method of notice which performs the same function and serves the same purpose as an authorized method of notice is not defective." *Id.* ¶ 15. The analy-

---

**8.** BAP also argues that even if defendants are entitled to enforce the dispute resolution process in the Agreement, they cannot invoke the arbitration clause until they have completed the first two steps in the dispute resolution process. Our construction of the Agreement and resolution of BAP's procedural compliance argument are dispositive of this contention.

sis in *Osprey* compels our conclusion that defendants did not waive the right to compel arbitration by engaging in mediation with the consent of BAP that used different procedures than those provided in the Agreement.[9] Arbitration should be compelled when parties have voluntarily agreed to submit a dispute "for a final and binding decision...." *Voss v. City of Oklahoma City*, 1980 OK 148, ¶¶ 4–6, 618 P.2d 925, 927–28.

## IV. Fraud in the Inducement

¶ 23 Finally, BAP argues on appeal that the arbitration provision is unenforceable because it was induced by fraud in the formation of the contract. Oklahoma law holds "that an agreement to arbitrate is voidable when either the arbitration provision of the agreement or the contract containing that agreement is fraudulently induced," and "plaintiffs must be given the opportunity to prove the existence of the fraud they allege occurred." *Shaffer v. Jeffery*, 1996 OK 47, ¶ 33, 915 P.2d 910, 918.[10] "[A]llegations of fraud in the inducement of an agreement to arbitrate must be resolved by the court prior to either compelling arbitration or dismissing the case." *Id.* ¶ 26, 915 P.2d at 917. Additionally, "allegations of fraud in the inducement of" an "agreement generally ... must be resolved by the court prior to either compelling arbitration or dismissing the case." *Id.*, 915 P.2d at 917–18. Therefore, "if Plaintiffs allege fraud in the inducement of the arbitration clause itself or the underlying contract of which the arbitration agreement is a part, the District Court must adjudicate that issue prior to granting ... any relief based upon the validity of the arbitration clause." *Id. See Thompson v. Bar–S Foods Co.*, 2007 OK 75, ¶ 33, 174 P.3d 567, 577.

¶ 24 BAP claims that fraud in the inducement was alleged in its original petition in paragraph 12:

Contrary to the representations of the Defendant, Dr. Pearman, to the partners of Plaintiff, and contrary to the belief and understanding of the partners of Plaintiff, concerning the role of the Defendant, AOB, as Manager, the Defendants, AOB and Dr. Pearman, have engaged in a course of conduct detrimental to and contrary to the best interest of Plaintiff and its partners....

paragraph 20:

In the formation of the Limited Liability Partnership Agreement of Plaintiff ... the Defendant, Dr. Pearman, represented, and the partners of Plaintiff understood and believed, that the role of the Defendant, AOB, as Manager of the partnership, would be to serve as vehicle for the billing and collection of patient fees generated by the services of the Plaintiff's partners, the supervision of accounting functions and the handling of negotiations with Jane Phillips Memorial Medical Center, Inc. and others. The Defendant, Dr. Pearman, did not reveal to the other partners of Plaintiff that the Defendant, AOB, intended to claim both legal and equitable title to the collected receivables and other funds attributable to the services of the partners of Plaintiff.

and paragraph 21:

While the Limited Liability Partnership Agreement of BAP, L.L.P. was being formed, it was the representation of Dr. Pearman and the belief of the Plaintiff's partners that the dispute resolution provisions therein, including the provision for binding arbitration, would apply only to disputes among the partners of Plaintiff and not to any dispute between Plaintiff and the Defendant, AOB, as the Plaintiff's designated Manager. Accordingly ... this Court should reform the dispute resolution provisions of said partnership agreement

---

9. Defendants also raise the issue on appeal of whether the district court erred in relying on inadmissible affidavits. Because we find the district court erred in denying the motion to compel arbitration, we find it unnecessary to address this argument.

10. We note that in *Shaffer* the Oklahoma Supreme Court, relying on state contract law, distinguished Oklahoma law from federal law,

which follows the doctrine of separability, allowing a court to adjudicate the question of "fraud in the inducement of the arbitration clause itself," but leaving the issue for arbitration when "the alleged fraud is in the inducement of the contract generally, although not of the arbitration clause in particular...." *Shaffer*, ¶ 15, 915 P.2d at 915.

to conform to the understandings of the majority in interest of Plaintiff's partners.

Defendants argue that BAP did not plead fraud with the required specificity.[11] We are unable to determine this issue because it is not apparent from the order appealed whether the district court was asked to, or if so, whether it did decide this issue. "An appellate court will not make first-instance determinations of disputed *law or fact* issues. That is the trial court's function *in every case* ...." *Bivins v. State ex rel. Oklahoma Mem'l Hosp.*, 1996 OK 5, ¶ 19, 917 P.2d 456, 464 (emphasis in original). Further, if within the scope of BAP's petition, the proper procedure for resolution of this issue is set forth in *Rogers v. Dell*, 2005 OK 51, ¶ 31, 138 P.3d 826, 834. As a result, this case must be remanded to the district court.

## CONCLUSION

¶ 25 This appeal requires construction of the dispute resolution provisions of the BAP Partnership Agreement. Properly construed, both AOB and Dr. Pearman are entitled to enforce the arbitration provision in the Partnership Agreement and have not waived the right to compel arbitration. Because the order appealed does not reflect whether BAP's allegation of fraud in the inducement of formation of the contract and the arbitration provision was properly raised, or, if so, resolved, we must remand this case for further proceedings.

¶ 26 **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

WISEMAN, C.J., and BARNES, J., concur.

**11.** We note the rule in Oklahoma pointed out by plaintiff that although fraud must be pled with specificity pursuant to 12 O.S.2001 § 2009(b), "[t]his statute requires only the degree of specificity necessary to enable the opposing party to prepare responsive pleadings and defenses and does not require a plaintiff to plead detailed evidentiary matters." *Hai v. Baptist Healthcare of Oklahoma, Inc.*, 2010 OK CIV APP 3, ¶ 19, 230 P.3d 914, 919 (citing *A–Plus Janitorial & Carpet Cleaning v. Employers' Workers' Compensation Assoc.*, 1997 OK 37, ¶ 35, 936 P.2d 916, 930–31).