2012 OK CIV APP 37

**Mark E. McKINZIE, an individual, and Maria M. Dagum, an individual, Plaintiffs/Appellees,**

v.

**AMERICAN GENERAL FINANCIAL SERVICES, INC., a foreign corporation; and IRT Transport, L.L.C. d/b/a IRT Transport and Recovery, L.L.C., a limited liability company, Defendants/Appellants.**

No. 108,332.

Court of Civil Appeals of Oklahoma, Division No. 1.

March 16, 2012.

Greg A. Castro, C. Eric Shepherd, Fellers, Snider, Blankenship, Bailey & Tippens, P.C., Oklahoma City, OK, for Appellants.

David Humphreys, Luke J. Wallace, Paul Catalano, Humphreys Wallace Humphreys, P.C., Tulsa, OK, for Appellees.

LARRY JOPLIN, Vice–Chief Judge.

¶1 Defendants/Appellants American General Financial Services, Inc., a foreign corporation, and IRT Transport, L.L.C., d/b/a IRT Transport and Recovery, L.L.C., a limited liability company (individually, by name, or collectively, Defendants) seek review of the trial court's order denying its motion to compel arbitration. In this appeal, Defendants challenge the trial court's order as affected by errors of both law and fact.

¶2 On October 31, 2007, Plaintiffs executed a Loan Agreement and Disclosure Statement with Defendant American General Financial Services. According to the document, American General loaned Mark $6,070.00, and Mark pledged as security a 1998 BMW and a 1999 Dodge pickup, which Mark and Plaintiff Maria M. Dagum owned jointly. Page one contained the Truth in Lending Disclosures, and at the bottom of the page, immediately above the signature lines, it said in bold type, "THIS AGREEMENT IS SUBJECT TO THE FEDERAL ARBITRATION ACT." On pages three and four of the Loan Agreement appeared some sixteen paragraphs setting forth all of the provisions for arbitration, as well as Mark's initials on each page. In relevant particular, the Loan Agreement provided:

*DESCRIPTION OF ARBITRATION.* Arbitration is a method of resolving claims and disputes between parties without having to file a lawsuit in court. It is a process in which both sides present their case to a neutral third person—the arbitrator—instead of a judge or jury, to resolve the dispute. TO THE FULLEST EXTENT PERMITTED BY LAW, BY SIGNING THIS AGREEMENT, BOTH LENDER AND I ARE VOLUNTARILY WAIVING ANY RIGHT TO A JURY TRIAL OR JUDGE TRIAL OF ALL CLAIMS AND DISPUTES COVERED BY THIS ARBITRATION AGREEMENT ("this Arbitration Agreement").

*CLAIMS AND DISPUTES COVERED.* Except for those claims mentioned below under the heading "MATTERS NOT COVERED BY ARBITRATION," Lender and I agree that either party may elect to resolve by BINDING ARBITRATION all claims and disputes between us ("Covered Claims"). This includes, but is not limited to, all claims and disputes arising out of, in connection with, or relating to:

*My loan from Lender today;* any previous loan from Lender and any previous retail credit agreement ("Retail Contract") whether open or closed-end, assigned to Lender; ... *whether the claim or dispute must be arbitrated; the validity and enforceability of this Arbitration Agreement*

*and the Agreement, my understanding of them, or any defenses as to the validity and enforceability of the Agreement and this Arbitration Agreement;* any negotiations between Lender and me; the closing, servicing, collecting, or enforcement of any transaction covered by this Agreement; any allegation of fraud or misrepresentation; any claim based on or arising under any federal, state, or local law, statute, regulation, ordinance, or rule; any claim based on state or federal property laws; any claim based on the improper disclosure of any information protected under state or federal consumer privacy laws; any claim or dispute based on any alleged tort (wrong), including intentional torts; and any claim for injunctive, declaratory, or equitable relief.

. . .

*OTHER IMPORTANT AGREEMENTS.*
Lender and I agree:

. . .

(g) *This Arbitration Agreement applies even if my loan has been* cancelled, *changed, modified, refinanced,* paid in full, charged off, or discharged or modified in bankruptcy.

(Emphasis added.)

¶ 3 On September 28, 2008, Mark sought from American General a release of the lien on the 1999 Dodge truck. Mark subsequently paid $1,000.00 toward his outstanding balance and American General released its lien on the Dodge truck. According to the Defendants, however, Mark and Maria quickly fell in arrears on the loan.

¶ 4 On January 29, 2009, Plaintiffs discovered the truck missing from their driveway, and Defendants admitted having repossessed the truck. Six days later, on February 5, 2009, Plaintiffs commenced the instant action against American General and the recovery agent, Defendant IRT Transport, and claimed both actual and punitive damages for conversion, negligence, trespass to chattels and wrongful repossession of the truck. Defendants answered, denied that it authorized release of its lien on the truck, asserted its right under the Loan Agreement to repossess the security for its loan, and set up defenses, including a demand for arbitration.

¶ 5 Defendants then filed their motion to compel arbitration. Defendants argued the Loan Agreement, consistent with the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–14, 201–208, and the Oklahoma Uniform Arbitration Act (OUAA), 12 O.S. §§ 1851 et seq., required arbitration of the current dispute.

¶ 6 Plaintiffs responded. Plaintiffs argued Mark and American General reached a new agreement at the time he paid the $1,000.00 and obtained the release, that the new agreement rescinded or waived any rights under the old, and that the new agreement, silent on the issue of arbitration, superceded the first agreement, so, consequently, arbitration was not required. Plaintiffs further argued the $1,000.00 paid in exchange for the lien release satisfied the debt on the truck, the Loan Agreement no longer applied as to the truck, and arbitration under the Loan Agreement was no longer required. Plaintiffs also challenged the arbitration provisions of the Loan Agreement as overly broad, unconscionable and unenforceable.

¶ 7 On consideration of the parties' briefs and oral argument, but without specific findings of fact or conclusions of law, the trial court denied Defendants' motion to compel arbitration. Defendants appeal. *See,* 12 O.S. Supp.2006 § 1879; Okla.Sup.Ct.R. 1.60, 12 O.S., Ch. 15, App. 1.

¶ 8 The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–9, § 2 provides:

A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Pursuant to § 2, "if the agreement . . . evidences a transaction involving commerce, the FAA and accompanying federal law control, and the central provisions of the federal law must be applied by state courts. *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852,

79 L.Ed.2d 1 (1984)." *Southern Oklahoma Health Care Corp. v. JHBR–Jones–Hester–Bates–Riek, Inc.*, 1995 OK CIV APP 94, ¶ 16, 900 P.2d 1017, 1020. That is to say, "[t]he FAA embodies a liberal policy favoring enforcement of arbitration agreements[,][and] ... requires state and federal courts to honor arbitration agreements duly entered into by the parties and to order the parties to arbitrate their disputes when they have agreed to do so." *Oncology & Hematology P.C. v. U.S. Oncology, Inc.*, 2007 OK 12, ¶ 21, 160 P.3d 936, 944. (Citations omitted.)

¶ 9 Consistent with the FAA, the OUAA likewise recognizes the validity and enforceability of arbitration provisions. 12 O.S. Supp.2006 § 1857.[1] So, ordinarily under both the FAA and OUAA, "[t]o assure that the parties have consented to arbitration, the courts will decide whether there is a valid enforceable arbitration agreement, whether the parties are bound by the arbitration agreement, and whether the parties agreed to submit a particular dispute to arbitration." *Oncology & Hematology P.C.*, 2007 OK 12, ¶ 22, 160 P.3d at 944–945. (Citations omitted.)

¶ 10 That said, however, the quoted arbitration section of the Loan Agreement contains a "delegation" provision, which grants to the arbitrator the authority to decide "whether the claim or dispute must be arbitrated; the validity and enforceability of this Arbitration Agreement and the [Loan] Agreement, my understanding of them, or any defenses as to the validity and enforceability of the [Loan] Agreement and this Arbitration Agreement." Defendants argue that the "delegation" of this authority to the arbitrator-to determine the validity and enforceability of this Arbitration Agreement, arbitrability of the issues, as well as the merits of the controversy-divests the trial court of authority to act other than to order the case to arbitration.

¶ 11 A "delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent–A–Center, West, Inc. v. Jackson*, —— U.S. ——, 130 S.Ct. 2772, 2777, 177 L.Ed.2d 403 (2010). "Parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.*

¶ 12 Nevertheless, the court remains the "gatekeeper" and is charged to determine whether the parties have entered a valid arbitration agreement. *Carter v. Schuster*, 2009 OK 94, ¶ 8, 227 P.3d 149, 152. So, "[i]f a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the ... court must consider the challenge before ordering compliance with that agreement." *Rent–A–Center*, 130 S.Ct. at 2778.

¶ 13 In this respect:

There are two types of validity challenges under § 2: "One type challenges specifically the validity of the agreement to arbitrate," and "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid."

*Rent–A–Center*, 130 S.Ct. at 2778. However, "only the first type of challenge," *i.e.*, "specifically [to] the validity of the agreement to arbitrate," "is relevant to a court's determination whether the arbitration agreement at issue is enforceable." *Id.*

¶ 14 So, in the presence of a delegation provision, the court must first determine whether the parties have entered a valid arbitration agreement: "The role of the court is to determine whether there is a valid binding arbitration clause, and if so, whether

---

1. That section provides:

    A. An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract.

    B. If necessary, a court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate.

    C. An arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable.

'the arbitration clause is broad enough to include the alleged dispute.'" *B.A.P., L.L.P. v. Pearman,* 2011 OK CIV APP 30, ¶ 7, 250 P.3d 332, 336. (Citations omitted.) "If the court answers both these questions in the affirmative, 'arbitration must be ordered.'" *Id.* Under the present delegation provision, the arbitrator is then charged with determining whether the dispute falls within the scope of the arbitration agreement, whether the arbitration agreement and the loan agreement are valid and enforceable, whether Defendants understood the arbitration provisions, and any of Defendants' defenses to enforcement of the validity and enforceability of this Arbitration Agreement and the [Loan] Agreement, my understanding of them, or any defenses as to the validity and enforceability of the [Loan] Agreement and this Arbitration Agreement.

¶ 15 "The question as to the existence of valid enforceable agreements to arbitrate ... is a question of law to be reviewed by a *de novo* standard, without deference to the lower court." *Oncology & Hematology P.C.,* 2007 OK 12, ¶ 19, 160 P.3d at 944. (Emphasis original.) On matters of procedure, however, the trial courts are granted broad discretion, and we will not disturb the trial court's judgment unless affected by an abuse of discretion. *Id.*

¶ 16 Defendants first assert the specific terms of the Loan Agreement to which Plaintiffs agreed call for arbitration, and the Plaintiffs' complaints fall squarely within the scope of the issues delineated by the Loan Agreement as subject to arbitration. In their fourth proposition, Defendants assert we should accordingly reverse the trial court's order and remand for entry of an order compelling arbitration. Plaintiffs respond, arguing their tort claims bear no relationship to the Loan Agreement, and, consequently, arbitration is not required. At any rate, say Plaintiffs, the arbitration provisions are overly broad and unconscionable, and are therefore not entitled to enforcement.

¶ 17 The Arbitration Agreement is part of the Loan Agreement, and its existence is boldly displayed. The Arbitration Agreement clearly and plainly requires arbitration of "all claims and disputes arising out of, in connection with, or relating to: My loan from Lender today; ... the validity and enforceability of this Arbitration Agreement and the Agreement, my understanding of them, or any defenses as to the validity and enforceability of the Agreement and this Arbitration Agreement; any claim or dispute based on any alleged tort (wrong), including Intentional torts; and any claim for injunctive, declaratory, or equitable relief." The Arbitration Agreement also "applies even if my loan has been cancelled, changed, modified, or refinanced." Plaintiff Mark acknowledged his acceptance of each page of the Loan Agreement by initialing each page.

¶ 18 When the parties entered the Loan Agreement, Plaintiffs agreed to the binding arbitration of any issue arising out of or related to the Loan Agreement, and Defendant repossessed Plaintiffs' truck as a result of their default on the Loan Agreement. We hold as a matter of law that all of the claims asserted by Plaintiffs are related to the Loan Agreement, and arbitration should be ordered. The trial court erred in holding otherwise.

¶ 19 In their second proposition, Defendants argue the arbitration provisions of the Loan Agreement require the arbitrator— not the trial court—to determine whether the parties agreed to arbitration, whether the issues fall within the arbitration agreement, and whether the arbitration provisions contained in the Loan Agreement are valid and enforceable. Plaintiffs respond, arguing that, because Defendants did not raise this issue below, they may not now raise it in this appeal.

¶ 20 As we have previously observed, the parties were free to agree to the arbitration of both the "gateway" issues of arbitrability, as well as the merits of any controversy arising from or related to the Loan Agreement. However, as the "gatekeeper," the trial court was required to first determine whether a valid arbitration agreement existed, and, if so, to then order the case submitted to an arbitrator. We have previously held the arbitration provisions apply in the current controversy and, under the delegation provision, the arbitrator is granted the authority to determine the remaining issues.

¶ 21 In their third proposition, Defendants assert the Plaintiffs failed their burden to prove (1) to overcome the presumption of arbitrability and (2) to demonstrate that any provision of the Loan Agreement or the arbitration provisions thereof were unconscionable and not entitled to performance. However, as we have previously observed, the delegation provision grants to the arbitrator the authority to determine the issues of arbitrability and any defenses to the arbitration provision or on the merits.

¶ 22 In their last proposition, Defendants assert the trial court erred in refusing to conduct an evidentiary hearing to determine the merits of Plaintiffs' defenses of rescission, waiver and satisfaction. As before, however, the delegation provision clearly authorizes the arbitrator to determine the validity of the defenses to liability under the Loan Agreement.

¶ 23 The trial court erred in denying Defendants' motion to compel. The order of the trial court is REVERSED, and the cause REMANDED with instructions to grant the motion to compel and refer the instant matter to arbitration.

BUETTNER, P.J., concurs, and HETHERINGTON, J. (sitting by designation), dissents.